[Civ. No. 4668. Third Appellate District.—January 9, 1933.]

LILLIE D. SMELLIE et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

W. H. Stammer for Appellants.

Conley, Conley & Conley for Respondents.

THOMPSON (R. L.), J.—The plaintiffs recovered judgment for damages for the death of Robert S. Smellie which resulted from a collision between a passenger train and an automobile in which he was riding as a guest. The Southern Pacific Company has appealed.

At the time of the accident which resulted in the death of Robert S. Smellie, he was riding as a guest in a Reo truck which was being driven by the owner thereof. The truck was struck by a passenger train at a crossing in the city of Madera. It was then broad daylight. The atmosphere was clear and the pavement was dry. The train was entering the station from the south. It was traveling on the main track at a rate of speed of from twenty-five to sixty miles an hour. A side-track extended parallel with the main track at a distance of about thirteen feet westerly therefrom. A freight train had just passed the crossing

traveling in a southerly direction. The freight train obscured the view of the driver of the truck. The deceased said: "It's all clear, let's go." Thereupon the truck passed the rear end of the freight train and drove on to the main track, where it was struck by the north-bound passenger train. Smellie was killed and the driver of the truck was seriously injured. There is some evidence that both the deceased and the driver of the truck had been drinking intoxicating liquor. At the first trial of the cause a nonsuit was granted. Upon appeal from the judgment which was rendered accordingly, the cause was reversed by the Supreme Court on the ground that the question of contributory negligence of the deceased was a problem for the determination of the jury. A more complete statement of the facts is contained in the opinion of that court. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529, 539].) The cause was again tried and a jury rendered a verdict in favor of the plaintiffs in the sum of $25,000. From this judgment the Southern Pacific Company has appealed.

It is contended the judgment should be reversed because the evidence shows the deceased to have been guilty of contributory negligence as a matter of law by encouraging the owner of the truck to attempt to cross the main track ahead of the passenger train by saying, "It's all clear, let's go," and by riding in the machine when both the driver thereof and the deceased had been drinking intoxicating liquor. It is also asserted the court erred in admitting evidence of a mere rule of the railroad company limiting the speed of the train within the city limits, and in admitting evidence of the poverty of the plaintiffs, and in limiting the cross-examination of plaintiffs' witnesses upon the subject of intoxication. The giving and refusing of certain instructions are also challenged as erroneous.

The respondents assert that the former decision of the Supreme Court in this action to the effect that the evidence established neither the negligence of the railroad company nor the contributory negligence of the deceased, as matters of law, becomes the law of this case, and required the cause to be submitted to the jury for its determination. It is therefore claimed the rendering of a judgment upon this trial in favor of plaintiffs with the implied findings that the railroad company was guilty of negligence

and that the deceased was not guilty of contributory negligence are conclusive upon this appeal. ▉ It is true that in successive appeals the determination of all issues which were formerly decided upon substantially the same evidence will be controlling on the court in a subsequent appeal as the settled law of the case. (2 Cal. Jur. 944, sec. 555; 4 C. J. 1093, sec. 3075; 2 R. C. L. 223, sec. 187; *United Dredging Co.* v. *Industrial Acc. Com.*, 208 Cal. 705, 712 [284 Pac. 922].) ▉ Upon the former appeal it was contended that the declaration of the deceased just before the truck was driven on to the main track where the accident occurred that "It's all clear, let's go," established contributory negligence as a matter of law. After reviewing the facts as they appeared in the former record, including the above statement of the deceased, the Supreme Court said: "Under these circumstances we think it was for the jury to say as a matter of fact, and not for this court to hold as a matter of law, whether the deceased was guilty of contributory negligence."

The former appeal was taken from a judgment of nonsuit. We are unable to say that decision was rendered upon substantially the same evidence which was adduced at the second trial. At least there is substantial evidence in the present record, which did not appear in the former trial, to the effect that both the deceased and his companion, the truck driver, had been drinking intoxicating liquor just prior to the accident. This evidence of intoxication on the part of the deceased was properly considered by the jury at this trial, upon the issue of contributory negligence. The present record contains enough additional evidence which was not adduced at the former trial to require this court to hold that neither the negligence of the railroad company nor the contributory negligence of the deceased was established as the settled law of this case.

▉ Independently of the application of the doctrine of the law of the case, in view of the former decision of the Supreme Court, we are impelled to hold there is substantial evidence supporting the implied findings of the jury that the railroad company was guilty of negligence which proximately contributed to the injuries which resulted in the death of Smellie, and that the deceased was not guilty of contributory negligence. The judgment may therefore

not be disturbed on this appeal for lack of evidence to adequately support it.

■ The sustaining of plaintiffs' objection to defendants' cross-examination of the co-defendant Ireland regarding the alleged intoxication of the deceased was harmless and does not constitute prejudicial error. The questions to which objections were sustained did not apply to any facts which were developed in the direct examination of the witness, and assuming the witness would have testified that Smellie had been drinking intoxicating liquor, that fact was fully developed by other witnesses. The evidence thus sought to be elicited would have been cumulative, and the sustaining of the objections of plaintiffs were therefore harmless.

■ In the course of the trial the co-defendant Ireland was called by the plaintiffs as a witness under the provisions of section 2055 of the Code of Civil Procedure. In the examination-in-chief he was asked no question relative to the use of intoxicating liquor either by himself or his companion Smellie. On cross-examination by the defendant railroad company, he was fully examined without objection regarding his own use of liquor and positively denied that he had been drinking intoxicating liquor. He was then asked: ''Do you know whether Mr. Smellie had had any intoxicating liquor that day?'' To this question the plaintiffs objected on the ground that it was improper cross-examination, and incompetent, irrelevant and immaterial. In support of these inquiries counsel for the railroad company made it very clear its only purpose in propounding these questions was to establish an affirmative defense of contributory negligence which might be indicated by a showing of drunkenness on the part of the deceased. This was an affirmative defense. It was not a legitimate cross-examination of any fact which was developed by the examination-in-chief. The cross-examination of a witness is confined to facts which are elicited in the examination-in-chief or which are indirectly involved therein. Section 2048 of the Code of Civil Procedure provides: ''The opposite party may cross-examine the witness as to any facts in his direct examination or connected therewith, . . . '' The railroad company had a right to call this man as its own witness and inquire as to the use of intoxicating liquor by the deceased in support of its affirmative defense of contributory negligence.

Under the circumstances of this case the challenged questions were not within the proper realm of cross-examination. Objections to these questions were therefore properly sustained.

Moreover, assuming the questions were within the proper scope of cross-examination, the sustaining of the objections was harmless for the reason that the use of liquor, to some extent, by the deceased was fully developed by other witnesses. Mrs. Oddoul testified that she saw the accident and promptly went to the deceased and bending over his body she "noticed an awful odor, . . . It smelled like wine to me, like sour wine." Miss Lichti, the superintendent of the hospital to which both Mr. Ireland and Mr. Smellie were immediately taken for care after the accident occurred, testified in response to a similar inquiry, "I noticed they both had liquor on their breath." Dr. Dearborn, a physician who examined the deceased shortly after the accident occurred, testified in that regard, "He had the odor of alcohol on his breath." Dr. Ransom, a physician who was also called as a witness by the railroad company, testified that he examined the deceased immediately after the accident occurred and smelled "a pretty heavy odor of alcohol on his breath". To the further question as to whether he would say Mr. Smellie was under the influence of liquor he replied, "I do not remember particularly, no."

It has been frequently held that the exclusion of evidence is harmless when the fact sought to be elicited is adequately shown by other competent testimony. (2 Cal. Jur. 1022, sec. 608; *Silvey* v. *Harm,* 120 Cal. App. 561, 573 [8 Pac. (2d) 570, 575].)

The following instruction which was given to the jury at the request of the plaintiff is erroneous. It is based on the provisions of section 486 of the Civil Code and is expressed in the following language:

"A bell must be rung at a distance of at least eighty rods from the place where the railroad crosses any street, road, or highway, and be kept ringing until it has crossed such street, road or highway; or a steam whistle must be attached and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same. The corporation operating the railroad is liable for all damages sustained by any person, and

caused by its locomotives, and trains of cars, when the provisions of this section are not complied with.''

The foregoing instruction contains a declaration of absolute liability on the part of the railroad company for a mere failure to ring the bell or blow the whistle as required by statute, regardless of whether such failure became the proximate cause of the accident, and regardless of whether the deceased was also guilty of contributory negligence. Under this instruction, if the deceased had observed the engine approaching at a high rate of speed only a short distance away and had persuaded the driver of the truck to take a reckless chance to cross the track ahead of the swiftly moving train, the jury was informed the railroad company was liable for all damages sustained, provided only the bell was not rung or the whistle blown as required by the statute. Clearly this is not the law. The instruction is fatally defective in two particular respects. It fails to inform the jury that the negligent omission to ring the bell or blow the whistle must become the proximate cause of the accident to create a liability on the part of the company. It also fails to inform the jury that if the deceased was guilty of contributory negligence no liability would attach even though the company was guilty of negligence in failing to comply with the statute.

It is true that the jury was elsewhere correctly instructed in general terms that negligence on the part of the railroad company which will create a liability against it must have been the proximate cause of the accident, and that the plaintiffs may not recover damages if it also appears that the deceased was guilty of contributory negligence. These principles, however, were not applied to the failure to ring the bell or blow the whistle. In no other instruction was the failure to comply with the provisions of section 486 of the Civil Code referred to. To specifically point out this particular omission and characterize it as negligence, declaring without reservation or exception that it created a liability against the company would be misleading to the jury. This defect was not remedied by the other general instructions. (*Keena* v. *United Railroads of San Francisco,* 57 Cal. App. 124 [207 Pac. 35]; *Starr* v. *Los Angeles Ry. Corp.,* 187 Cal. 270, 278 [201 Pac. 599, 601].) In the case last cited it is said:

"Respondent's contention that this instruction was cured because of other instructions on the subject of proximate cause and contributory negligence cannot be maintained. The jury were elsewhere instructed, at defendant's request, that unless the plaintiff proved the negligence of the railroad company, and that such negligence proximately contributed to the injuries sustained, there could be no recovery. . . . The difficulty is that when the court specifically instructed the jury that in a certain state 'of facts they must bring in a verdict for the plaintiff, the jury has the right to assume that the court in that instance is determining as a matter of law that such negligence was the proximate cause of the injury and that there was no contributory negligence."

In *Lawrence* v. *Southern Pac. Co.*, 189 Cal. 434, 442 [208 Pac. 966, 969], it is said: "This court has uniformly held that instructions relating to the failure of a defendant to perform a duty imposed by statute as constituting actionable negligence should embrace the limitation that the omission must have contributed directly to the injury."

In the present case the prejudicial effect of the challenged instruction was aggravated by a refusal to give to the jury an instruction which was offered by the railroad company in which it was correctly pointed out that the provisions of section 486 of the Civil Code did not require both the blowing of a whistle and the ringing of a bell, and upon the contrary declared that the ringing of a bell as provided by the section was a sufficient compliance with the statute. This instruction should have been given. The ringing of the bell became an important issue in the trial of the case. There was a conflict of evidence on this subject. The plaintiffs' evidence in support of the theory that no bell was rung was negative in form. Witnesses testified in effect that they heard no bell rung. On the contrary, several witnesses testified positively that the bell was rung automatically and constantly until the crossing was reached.

The following instruction was given to the jury at the request of the plaintiffs:

"It is the duty of the Southern Pacific Company, a corporation, to run the train in question on its tracks across the Ninth Street crossing in the city of Madera, with due

regard for the safety of persons who might be using said crossing."

It is insisted by the appellant this instruction is erroneous because it disregards the well-established standard of reasonable care which is imposed upon a railroad company in the operation of its trains. In view of other instructions which were given to the jury clearly limiting the necessity to the exercise of reasonable care only, we think the language of this instruction which requires the operation of trains "with due regard for the safety of persons who might be using said crossing" is not misleading.

■ In response to the assignments of error in giving and refusing instructions, the respondents assert the appellant has waived its right to rely upon these defects by its failure to print in its brief all instructions bearing upon the particular subjects involved therein, as provided by Rule VIII, Rules for the Supreme Court and District Courts of Appeal. This contention is not supported by the record which is before the court. Our attention is called to no instructions given or refused which involve the provisions of section 486 of the Civil Code, except the two above referred to. Both of these instructions were printed in the appellant's brief. This court rule does not require the printing of instructions which are not related to the subject matter included in the challenged instructions. The appellant did not waive its right to assign the giving and refusing of these instructions as error by failure to comply with the provisions of the above-mentioned court rule.

■ The court permitted the plaintiffs to testify, over repeated objections on the part of the defendant railroad company, to their poverty and consequent inability to complete the education of the minor children of the deceased. This evidence of poverty and inability to pay for an education of minor children and the necessity of taking them from school and setting them to work to contribute to the necessary family support would tend to influence the verdict of the jury by prejudice or sympathy. In suits for damages for the death of a parent the authorities are uniform in holding that evidence of the poverty and changed financial condition of the family since the demise should be excluded.

Over the objections of the defendants, LeRoy Smellie, the minor son of the deceased, was permitted to testify that prior to the death of his father he had planned on a college education, and that since his father's death he was compelled to work to carry on his college course; that after his brothers finished their high school course it was necessary for his three brothers to go to work to supply the needs of the family. LeRoy testified in that regard: "Q. Was it necessary for them to do that, in order that the family home could run? . . . A. Yes sir. Q. What did they do with their earnings? A. They turned it in to keep the home going. Q. Turned it in to your mother? A. Yes sir." This admission of testimony constituted prejudicial error. (*Mahoney* v. *San Francisco & S. M. Ry. Co.,* 110 Cal. 471 [42 Pac. 968, 43 Pac. 518]; *Green* v. *Southern Pac. Co.,* 122 Cal. 563 [55 Pac. 577]; *Story* v. *Green,* 164 Cal. 768 [130 Pac. 870, Ann. Cas. 1914B, 961]; *Steinberger* v. *California Elec. Garage Co.,* 176 Cal. 386 [168 Pac. 570]; *Johnston* v. *Beadle,* 6 Cal. App. 251 [91 Pac. 1011]; *Ensign* v. *Southern Pac. Co.,* 193 Cal. 311, 321 [223 Pac. 953]; *Simoneau* v. *Pacific Elec. Ry. Co.,* 166 Cal. 264, 275 [136 Pac. 544, 49 L. R. A. (N. S.) 737].)

■ The admission in evidence of the time-table of the railroad company as proof of negligence was erroneous. This time-table contained specified limitations of the speed at which trains were to be operated. It provides that, "Within the city limits of Madera, between . . . Sugar Pine and Winery Spurs," the speed of trains is limited to ten miles an hour. Ninth Street, where the accident occurred, is located within this zone in which the speed of trains is limited by the terms of the time-table to ten miles an hour. Upon the time-table the following statement is clearly printed: "For the government and information of employees only, and not intended for the use of the public." This time-table was received in evidence over the objection of the railroad company. The record contains no evidence that the deceased, the driver of the truck, or the public in general either knew of this limitation of speed or relied upon it in crossing the railroad track within that district. There is no evidence that it was the custom of the railroad company to limit the speed of its trains to ten miles an hour within that district. It seems unreasonable to assume it

applied to regular passenger trains. The evidence is conflicting regarding the actual speed of the train just prior to the accident. The engineer said they were traveling at their usual speed of twenty or twenty-five miles an hour. Some witnesses testified the train was traveling fifty or sixty miles an hour. There is no statute or ordinance of the city of Madera limiting the speed of trains within that city. It is therefore clear the reception in evidence of the time-table would give the jury the impression that the operation of trains at any speed in excess of ten miles an hour within the district where the accident occurred, constituted negligence on the part of the railroad company. Unless the time-table, which amounts to mere private rules of the company for the use of its employees, furnishes competent evidence of reasonable care, it is not entitled to be received in evidence under the circumstances of this case.

A carrier may not fix the standard by which its negligence may be determined. In the absence of statute or an ordinance upon the subject, the rate of speed which will be deemed to be excessive and therefore negligent depends upon the surrounding circumstances. It is the sole province of the jury to determine from the particular facts of the case what conduct constitutes negligence.

There is an apparent conflict of authorities respecting the competency of private rules of operation as evidence tending to establish negligence. Many cases relative to the competency of private rules may be reconciled by distinguishing between those suits in which an employee seeks to recover damages from his employer for injuries sustained in the course of his employment by failure to enforce rules or customs known to the employee and relied upon by him, from that other class of cases wherein a stranger seeks compensation from a carrier or other industry for injuries resulting from the violation of private rules not intended for the use or benefit of the general public, and the existence of which is neither known to nor relied upon by the injured party. There is good reason for the uniform principle that masters are bound to furnish their employees with reasonably safe apparatus with which to work, and to adopt and enforce reasonable rules of operation for the protection of their servants. (1 Shearman & Redfield on Negligence, 6th ed., 510, sec. 202; 3 Elliott on Railroads, 2d ed., 688, sec.

1281.) Such rules or customs may be competent evidence of negligence under proper circumstances. In 45 C. J. 1258, section 827, it is said in that regard:

"Rules adopted by an employer, prescribing the care or precautions to be taken by his employees in the conduct of his business, or evidence of an established custom of conducting his business in a particular manner, whether established by rules promulgated by persons in authority or growing out of the long continued practice of employees, may, it is usually held, be admitted against him to show negligence on the part of an employee, when relevant to the issue, even though the injured person had no knowledge of such rules or custom, except where they require the performance of duties greater than those required by law."

The rules of an employer regarding the conduct of his business, under the circumstances above referred to, are sometimes admitted in evidence on the theory that they are in the nature of admissions of conduct which he deems to be necessary to constitute reasonable care. This reasoning has been severely criticised.

Upon the contrary there are many authorities which hold that private rules regarding the conduct of business are not competent evidence to establish negligence. This is especially true when the suit is brought in behalf of a stranger to the enterprise who had no knowledge of the existence of such rules and therefore does not rely upon them for protection. These rules are also held to be incompetent as evidence of negligence when they purport to increase the burden of care beyond the standard of reasonable precaution which the law requires. To permit the operator of an industry to establish a standard of care by the adoption of rules, different from the ordinary standard of reasonable care which is required by law, regardless of whether the complainant, who is protected by no special contract of employment, knows of these rules or relies upon them, would create as many standards of conduct as there are various organizations with different operating rules. The public would then have no fixed standard of care upon which it could rely for protection. Among the best considered cases which hold these rules to be incompetent under such circumstances is *Fonda* v. *St. Paul City Ry. Co.*, 71 Minn. 438

[74 N. W. 166, 169, 70 Am. St. Rep. 341]. The Supreme Court reversed the judgment in that case for error in admitting in evidence the private operating rules of a street railway company. The court said:

"The court also admitted in evidence, over defendant's objection, its rules intended only for the guidance of its own employees in the operation of its cars. We think this was error. There was no evidence that the plaintiff had any knowledge of the existence of these rules or of any custom, based upon them, as to the manner of operating cars; hence his conduct could not have been in any way affected or influenced by them. . . . But a person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common. Such rules may require more, or they may require less, than the law requires; and whether a certain course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party. . . . The fallaciousness and unfairness of any such doctrine [admitting in evidence private rules in proof of negligence against the promulgator thereof] ought to be apparent on a moment's reflection. The effect of it is that, the more cautious and careful a man is in the adoption of rules in the management of his business in order to protect others, the worse he is off, and the higher the degree of care he is bound to exercise. . . . To treat the adoption of such rules as an admission against the party would involve the same principle as treating repairs or improvements made after an accident as an admission of prior defects,—a doctrine long since repudiated by this court, and now repudiated by most of the courts of the country."

The foregoing language was approvingly quoted in the case of *Chicago, B. & Q. Ry.* v. *Lampman,* 18 Wyo. 106 [104 Pac. 533, Ann. Cas. 1912C, 788, 25 L. R. A. (N. S.) 217]. Among other cases which for reasons variously expressed have excluded private rules from evidence as proof of negligence under circumstances similar to those of the present case are the following: *Isackson* v. *Duluth Street Ry. Co.,* 75 Minn. 27 [77 N. W. 433]; *Hoffman* v. *Cedar Rapids & M. C. Ry. Co.,* 157 Iowa, 655 [139 N. W. 165, 170, Ann. Cas. 1915C, 905]; *Carney* v. *Boston Elevated Ry.,*

219 Mass. 552 [107 N. E. 411]; *Louisville & N. R. Co.* v. *Stidham's Admx.*, 187 Ky. 139 [218 S. W. 460]; *Louisville & N. R. Co.* v. *Dyer*, 152 Ky. 264 [153 S. W. 194, 48 L. R. A. (N. S.) 816]; *Alabama Great Southern R. Co.* v. *Clark*, 136 Ala. 450 [34 South. 917]; *Brown* v. *Detroit United Ry.*, 179 Mich. 404 [146 N. W. 278]; *Virginia Ry. & Power Co.* v. *Godsey*, 117 Va. 167 [83 S. E. 1072]. In the Alabama case above cited it is said:

"By rules adopted for the government of its employees in the management of its internal business, the defendant company could not lessen the degree of care which the law requires, and it would be unreasonable to hold the defendant to a higher degree of care than the law imposes, because in its rules, in order to more thoroughly guard against accidents, it exacted an unusual or extraordinary degree of care of its employees."

In a careful examination of the California authorities upon which the respondents rely in support of the ruling admitting in evidence the rules of the company, we are persuaded none of them are in point. These cases are usually between an employee and an employer. They are based upon rules or custom known to the injured parties and relied upon by them. In one or two instances private rules were introduced without objection. They furnish no authority for the introduction of private rules as proof of negligence in a suit between a common carrier and a stranger to that company when the injured party is ignorant of the existence of such rules and does not rely upon them for his protection. The competency of such evidence has not been heretofore passed upon by the California courts. We believe such evidence is incompetent and prejudicial.

In the present case there is no evidence the railroad company was accustomed to run its passenger trains at ten miles an hour "between Sugar Pine and Winery Spurs" in the city of Madera. There is no evidence the deceased knew of such a rule or relied upon it. Moreover, negligence must become the proximate cause of the accident to create a liability. It does not seem reasonable to hold that if the passenger train had been running at only ten miles an hour, the accident could have been avoided. Immediately after the freight train passed the crossing the deceased said, "It's all clear, let's go," and the truck drove across the

intervening space of thirteen feet on to the main track, where it was struck. The evidence shows that when the truck emerged from behind the freight train the engine was but sixty feet away. With the hearing of the occupants of the truck impaired by the noise of the passing freight train, and their sight of the main track obscured by the line of box-cars, great care should have been exercised in driving out upon the main track.

On account of the giving and refusing of erroneous instructions, the admission of proof of the poverty of the family of the deceased and the admission of the private rules of the railroad company as proof of negligence, it becomes necessary to remand the cause.

The judgment is reversed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 8, 1933, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 9, 1933, and the following opinion then rendered thereon:

THE COURT.—Respondents' petition to have the above-entitled cause heard and determined by this court after judgment in the District Court of Appeal of the Third Appellate District is denied.

Such denial, however, shall not be construed as an approval by this court of that portion of the opinion of the District Court of Appeal which holds that admission of evidence of the rules adopted by the defendant for the government of its business was incompetent and prejudicial.