[Civ. No. 2481. Fourth Appellate District.—January 7, 1941.]

GEORGE H. HOPPE, Appellant, v. CHARLES B. BRADSHAW et al., Respondents.

Davidson & Bartlett and Fred A. Wilson for Appellant.

Swing & Swing for Respondents.

GRIFFIN, J.—Plaintiff and appellant George H. Hoppe, while walking across a public highway, was struck by an

automobile belonging to defendant and respondent Southern California Edison Co., Ltd., and then being driven by defendant and respondent Charles .B. Bradshaw.

This action was instituted to recover damages because of injuries thus received. The court directed a verdict in favor of defendants. From the judgment upon such directed verdict the plaintiff has taken this appeal.

The collision occurred at about 10:30 A. M. on October 3d, 1938, on California Boulevard, a paved highway about eighteen or twenty feet in width, extending east from the city of Ontario. On the north side of California Boulevard, at this point, the land is unimproved. On the south side is the property of the Cucamonga Co-Operative Winery, which is enclosed by a wire fence. The fence along the north side of the winery property is parallel to and about seven feet south of the south edge of the pavement on California Boulevard. The fence above described has four truck gates and one pedestrian gate, by means of which vehicles and pedestrians on the boulevard gained access to the winery.

At the time of the accident there were located on the south side of California Boulevard between the south edge of the pavement and the fence enclosing the winery property six or seven parked automobiles which were parked parallel with the highway and about one foot apart. The left front fenders on some of these parked automobiles extended over the south edge of the pavement from six to eight inches. Between the buildings on the winery property which were immediately south of the fence and the parked automobiles was a row of eucalyptus trees. The pedestrian gate above described, leading from the buildings to the highway, was located about nine feet to the rear of the most westerly car in the row of cars above described. There were no marked or unmarked cross-walks on the highway.

On the day in question, the appellant had driven his truck loaded with grapes into the winery, and after unloading it had driven out through one of the gates and according to one witness stopped on the north shoulder of the highway, off the pavement a few inches, at a point opposite the pedestrian gate. He then walked from his truck south across the boulevard and into the winery building. After some first aid had been administered to him because of a slight cut on the head, he left the building and walked north across a platform leading to the pedestrian gate for the purpose of returning

to his truck on the north side of the boulevard. This platform was at least twenty feet square and was elevated above the surface of the ground about one and one-half or two feet. From this platform the exhibits and other evidence indicate that appellant could have observed an oncoming automobile over the tops of the parked cars, just before he stepped to the ground at the entrance to the gate. The record is silent as to whether he made any observation from this point. As appellant was starting across the boulevard from behind the parked cars the automobile operated by Bradshaw, which was traveling westerly, collided with him and knocked him to the pavement. As a result the appellant sustained a compound comminuted fracture of one leg, a fracture of the skull and a brain injury. The brain injury resulted in a loss of memory to such an extent that he had no recollection of any of the incidents from the time he crossed the winery building platform until he regained consciousness in the hospital six days later.

The motion for a directed verdict was based upon the asserted absence of negligence on the part of defendants and respondents and the asserted contributory negligence on the part of plaintiff and appellant.

As to respondent Bradshaw's negligence the record discloses, from the evidence of one of the witnesses produced by appellant, that certain skid marks of respondents' automobile started about twelve feet east of the pedestrian gate and continued westerly for seventy-five feet and that these marks were "straddle of the center of the road . . . right straddle of the middle of the road".

Another witness testified that the appellant was lying on the *south* edge of the pavement with his feet "close to the edge or on the dirt"; that the skid marks were "practically about in the middle of the road" and about seventy or seventy-five feet long; that these marks began fifteen or sixteen feet east of the pedestrian gate; and that the *left front fender* of the respondents' automobile was damaged; that the distance between appellant's parked truck and the south edge of the pavement was approximately fifteen feet.

Appellant contends that this evidence conclusively shows that the respondent Bradshaw was traveling on the wrong side of the highway at the time of the accident, citing section 525 of the Vehicle Code.

In reference to the speed of respondent's automobile one of the appellant's witnesses testified that he was walking westerly along the inside of the north fence at a point two hundred feet east of the pedestrian gate when the respondents' automobile went past traveling ''45 miles an hour at least''.

Appellant contends that a lower rate of speed was imperative under section 510 of the Vehicle Code for the reason that the roadway was narrow; that the pavement at the point of the accident was not over eighteen or nineteen feet wide; that the south edge of the pavement was filled with a string of automobiles extending east from the pedestrian gate, leaving only a traveled surface of eighteen feet between this row of automobiles and the north edge of the pavement; that on the north shoulder there were three or more parked automobiles; that the appellant's truck was also parked on the north edge of that same pavement; that the highway was being used extensively due to the fact that it was the busy season at the winery and that this fact was obvious from the activities in and about the premises, the coming and going of trucks with grapes, and other commodities incident to operation, and the presence of many parked vehicles of workmen and patrons on both sides of the street, all of which was known to the respondent Bradshaw, who traveled over this portion of the boulevard bi-weekly for five years and had driven past the winery earlier that same day; that the visibility was poor; that the view of the pedestrian gate and the scale gate, from which the approach of others onto the highway should be anticipated, was obstructed to motorists coming from the east by the row of parked automobiles on the south shoulder, and by the fence; that respondent Bradshaw admitted that he did not blow his horn because ''it was split second between the time I saw him and the time I hit him''; that there was no reason why Bradshaw could not have blown his horn before he saw the appellant and that under section 671b of the Vehicle Code it was his duty so to do; and that he failed to keep a lookout and anticipate the presence of others on the highway.

The record discloses from the testimony of one of appellant's witnesses that he had a conversation with the respondent Bradshaw immediately after the accident and that Bradshaw told him that he (Bradshaw) ''didn't see him (Hoppe) until he was right on him''.

Appellant, after narrating the extent of his injuries, testified as follows: "Q. (By Mr. Wilson): What is the first recollection you have of anything at all after the accident occurred . . . A. The first I can recall is when I came to in the hospital . . . Q. Do you have any recollection of any events at all which transpired from the time you were on the platform until you regained consciousness in the hospital? A. No. Q. (By Mr. Swing): Q. And you came out of the door onto the platform? A. Yes, sir. Q. Where were you going? A. All I can remember is going across this platform right here. Q. Where were you going— A. I was headed for the truck. Q. Do you remember looking in either direction along the highway? A. I don't remember. Q. Do you remember seeing any cars coming? A. No. Q. Do you remember stopping and making any observations at all? A. I don't know".

In corroboration of appellant's testimony the physician who attended him testified: "Q. (By Mr. Wilson): What can you say relative to his mental condition following the accident? A. We didn't get very much out of him until the 8th or 9th. He remembered nothing for the period of time that he was in the hospital, and it was practically a week before that when he started talking that he didn't know anything that had gone on prior to that week. Q. What do you call that? A. That is a period of what we call aphasia, in which there has been enough temporary or permanent brain damage that the individual cannot remember things that happened during the accident immediately or for a given period prior to it. Roughly speaking the amount of damage to the brain can be measured with a loss of memory prior to the accident at the time the brain was struck. In this case the loss of memory prior to the accident decreased as he improved and it was a period of a day or a portion of a day that he had completely lost out. For some months afterwards he did not remember what had happened during that day or the day prior".

It is appellant's contention that when he, because of loss of memory, is unable to testify respecting his conduct immediately prior to the accident, he is presumed to have exercised reasonable and ordinary care for his own safety, and in support of the applicability of this rule to the facts in the instant case he cites *Borum v. Graham,* 4 Cal. App. (2d) 331 [40 Pac. (2d) 866], *Whicker v. Crescent Auto Co.,* 20

Cal. App. (2d) 240 [66 Pac. (2d) 749], *Parker* v. *Manchester Hotel Co.,* 29 Cal. App. (2d) 446 [85 Pac. (2d) 152], *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529], *Mar Shee* v. *Maryland Assurance Corp.,* 190 Cal. 1 [210 Pac. 269], and *Scott* v. *Sheedy,* 39 Cal. App. (2d) 96 [102 Pac. (2d) 575], where the District Court of Appeal extended the rule announced in the Mar Shee and Smellie cases to a case where loss of memory was the direct result of a brain injury sustained in the collision. The justification for the rule there announced was based upon the fact that the injured person died and therefore could not testify. In extending the rule in *Scott* v. *Sheedy, supra,* the court predicated its opinion upon the same principle, that is, that the person was deprived of his testimony because of the injuries received in the accident. In the instant case there appears to be sufficient evidence, if believed by the jury, to justify the conclusion, if drawn by the jury, that the appellant was deprived of his memory because of a head injury. If the jury so concluded, appellant would then be entitled to the benefit of the presumption.

Respondents thereafter produced certain witnesses who testified in their behalf. The respondent Bradshaw testified generally that he was driving in a westerly direction on California Boulevard and that just before he approached the scene of the accident he slowed down to 35 miles an hour; that he saw the parked automobiles and the parked truck; that when he was "a short distance east of the small gate Mr. Hoppe came out from behind a parked car, to my best recollection, on a jog, he was trotting, a slow run . . . he came from behind the parked car, he looked neither right nor left, and in the split second I had I applied my brakes and started to swerve to the right to avoid hitting him"; that at that time he (Bradshaw) was traveling "on the northern half" of the highway; that when he first saw Hoppe he had reached the edge of the south pavement; that Hoppe "trotted" six or eight feet toward the center of the highway; and that appellant was struck when he was near the center of the highway.

It is apparent that the evidence produced by the appellant, viewed in its most favorable light and if believed by the jury, would be sufficient to show negligence on the part of the respondent Bradshaw. Bradshaw's testimony merely created a conflict on this question and unless the appellant was

guilty of contributory negligence as a matter of law the question should have been submitted to the jury.

We next approach the question of the contributory negligence of appellant. The evidence shows that appellant, prior to the accident, had some impairment of hearing and was accustomed to wearing a device known as a "bone conductor" as an aid to his hearing; and that prior to the injury he wore glasses, due to "spasm of the eye . . . blinking of the eye".

The testimony of respondent Bradshaw constituted all of the evidence respecting appellant's conduct prior to the collision and this testimony only covered an interval of not more than a second or two, as appellant proceeded forward three or four steps from behind the parked automobile onto the highway. Appellant's conduct from the time he crossed the platform to the time he reached the south edge of the pavement is not revealed.

Respondents insist that at the time the motion for a directed verdict was granted appellant was no longer entitled to the benefit of the presumption of due care; that the evidence in the instant case dispelled any such presumption and established negligence on appellant's part as a matter of law; that had appellant exercised the care that the law imposed upon him he would have seen respondents' automobile and avoided the accident; that had his hearing not been affected he would have heard the oncoming automobile before leaving the platform or at least before stepping onto the highway, and would have accorded it the right of way, and that his failure to look was negligence as a matter of law; that when he failed to look while in a position where he could see, and without looking voluntarily placed himself in a position where he could neither see nor hear and then, without looking, walked onto the highway in front of a plainly visible oncoming automobile, he abandoned caution and thoughtlessly placed himself in a position of imminent peril from which there was no escape. It is then argued that even where the presumption of due care is indulged in, still such a presumption is not equivalent to a presumption that a person is free from contributory negligence, citing *Speck* v. *Sarver*, \*(Cal. App.) [106 Pac. (2d) 49], *Morris* v. *Purity Sausage*

---

\*In the case of *Speck* v. *Sarver*, the Supreme Court granted a hearing on December 5, 1940.

*Co.*, 2 Cal. App. (2d) 536 [38 Pac. (2d) 193]; *Deike* v. *East Bay Street Rys., Ltd.*, 7 Cal. App. (2d) 544 [46 Pac. (2d) 812], *Wing* v. *Kishi*, 92 Cal. App. 495 [268 Pac. 483], *Gibb* v. *Cleave*, 12 Cal. App. (2d) 468 [55 Pac. (2d) 938], *Casey* v. *Delelio*, 39 Cal. App. (2d) 91 [102 Pac. (2d) 557], *Lindley* v. *Southern Pacific Co.*, 18 Cal. App. (2d) 550 [64 Pac. (2d) 490], *Horton* v. *Stoll*, 3 Cal. App. (2d) 687 [40 Pac. (2d) 687 [40 Pac. (2d) 603], *Chase* v. *Thomas*, 7 Cal. App. (2d) 440 [46 Pac. (2d) 200], and *Mundy* v. *Marshall*, 8 Cal. (2d) 294 [65 Pac. (2d) 65].

Appellant in reply argues that respondents fail to appreciate the limitations upon the powers of the trial court when directing a verdict and that under the rule laid down in *Estate of Flood*, 217 Cal. 763 [21 Pac. (2d) 579], the trial court has no power to weigh the evidence, must disregard conflicting evidence, indulge in every legitimate inference and presumption, and may not judge the credibility of witnesses but must give plaintiff's evidence all of the value to which it would be legally entitled if the witnesses were believed, and in this connection it is argued that there were not any witnesses who could establish the conduct of the appellant from the time he crossed the platform until he was first seen by Bradshaw on the pavement; that appellant himself, because of his injuries, had no recollection of the events during this interval and that under the rule applied in *Scott* v. *Sheedy, supra*, the law presumes that during that period appellant exercised due care for his own safety; that in the absence of evidence on the subject this presumption prevails; that the trial court is required to accept all inferences and presumptions in favor of the appellant and the question of whether a presumption is dispelled or overcome is one for the jury, citing *Duehren* v. *Stewart*, 39 Cal. App. (2d) 201 [102 Pac. (2d) 784]; that it was a question for the jury to determine whether the presumption had been overcome by evidence offered in contradiction thereof; that appellant was entitled to the benefit of the presumption above mentioned, as his own evidence was reconcilable with it and such presumption remains evidence in the case until dispelled or overcome by evidence offered in contradiction thereof; and that the trial court erred in directing the verdict in favor of the respondents.

Of course, the mere fact that the court in the instant case denied a motion for a nonsuit would not prevent it from subsequently directing a verdict for the defendant if the

condition of the evidence so warranted. (*Sellers* v. *Solway Land Co.*, 31 Cal. App. 259 [160 Pac. 175]). In considering a motion for a directed verdict, the evidence of the adverse party must be deemed to have been true, together with all fair and rational inferences and deductions which may reasonably be drawn therefrom. (*Seperman* v. *Lyon Fire Proof Storage Co.*, 97 Cal. App. 654 [275 Pac. 980].) The rule in reference to a directed verdict for a defendant laid down in *Johnson* v. *Southern Pacific Railroad Co.*, 154 Cal. 285 [97 Pac. 520], has been repeatedly cited to the effect that a court may instruct the jury to return a verdict for the defendant on the ground of contributory negligence of the person injured only when the evidence conclusively establishes such contributory negligence, and no deductions or inferences other than contributory negligence may be drawn by the jury from the evidence.

In *Rinker* v. *Carl*, 102 Cal. App. 436, at p. 441 [283 Pac. 317], the court said:

" . . . it is now well established that it is not contributory negligence as a matter of law for one crossing a paved highway from the south to the north, not to look to the left or to the west after reaching the medial line; . . . The plaintiff was not under obligations to look both ways at all times. He was under obligations to look to the left while crossing the southerly half of the boulevard and to look to the west when crossing the northerly half thereof. A failure to look both ways while he was crossing the respective halves of the boulevard did not, and would not, constitute negligence *per se*. At most it would only present the question of contributory negligence to the jury as a matter of fact, by reason of the rule prevailing that automobile drivers, under ordinary circumstances, must propel their cars on the half of the highway prescribed by section 122 of the Motor Vehicle Act as well as the authorities which we have here cited."

In *Nickell* v. *Rosenfield*, 82 Cal. App. 369 [255 Pac. 760], it was held that the duty of the pedestrian is to look in the direction from which traffic is to be expected. Failing so to do, he would be guilty of contributory negligence; but if he fails to observe an automobile approaching from the wrong direction, the pedestrian is not guilty as a matter of law for failing to observe the same. To the same effect see *Henry* v. *Lingsweiler*, 81 Cal. App. 142 [253 Pac. 357], *Wright* v. *Foreman*, 86 Cal. App. 595 [261 Pac. 481], *Rignell* v. *Font*,

90 Cal. App. 730 [266 Pac. 588], *Genola* v. *Barnett*, 14 Cal. (2d) 217 [93 Pac. (2d) 109], *Varner* v. *Skov*, 20 Cal. App. (2d) 232 [67 Pac. (2d) 123], and *Wickman* v. *Lowenstein*, 136 Cal. App. 279, 284 [28 Pac. (2d) 681], where it is said that the general rule is:

"Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. *Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.*"

Other cases might be cited, but the rules are well established, just as we have stated them, by the authorities cited.

In *Eastman* v. *Rabbeth*, 128 Cal. App. 534 [17 Pac. (2d) 1009], this court had before it for consideration a similar question to the one here presented. In upholding the judgment we there held that the plaintiff, who stepped out from behind a palm tree and was injured by a passing car, was rendered unconscious by the accident, and did not testify, and only remembered that he had been walking on a public street in Redlands, was entitled to the benefit of the presumption that he (the injured party) used ordinary care for his own safety and that, in so doing, he looked.

In *Duehren* v. *Stewart, supra,* which is similar in principle, this court, after reviewing many of the cited cases, approved an instruction to the effect that "it is presumed that the deceased used proper care; that he made reasonable lookout for his own safety and protection, and that at the time he proceeded across the intersection conditions were such that it was safe to do so". We there held that "Respondents produced no evidence to determine what observations Mr. Duehren made just before he attempted to cross the street. Appellant offered no evidence as to whether the deceased looked *prior to the time he stepped off the curb.* Respondents were therefore entitled to the benefit of the presumption above mentioned, as their own evidence was reconcilable with it, and such presumption remained as evidence in the case until dispelled or overcome by evidence offered in contradiction thereof." So in the instant case there was no evi-

dence as to whether the appellant looked prior to the time he stepped onto the pavement.

We therefore conclude that appellant was entitled to the benefit of the presumption here claimed until dispelled by evidence opposed to it. It is true that Bradshaw's testimony created a conflict in certain particulars and the testimony of other witnesses to certain facts differed in some respects. It will be remembered that one witness for appellant testified that Bradshaw stated that he did not see appellant "until he was right on him". Assuming the truth of this statement, then Bradshaw's testimony that appellant failed to look as he stepped from behind the parked car was, at least, open to question. Bradshaw's testimony, though evidence in the case which the jury might have considered, did not of itself destroy the *probative weight of the fact presumed.* The question whether his testimony proved facts sufficient to overcome the presumption was one for the jury. (*Whicker* v. *Crescent Auto Co., supra,* p. 242.)

We are not here confronted with nor called upon to determine the question whether the trial court, under the evidence here presented, might have been fully justified in granting a motion for a new trial for insufficiency of the evidence, where it is authorized to weigh the conflicting evidence produced, had a verdict been rendered in favor of appellant. In view of the differences in the consequences flowing from a directed verdict and from an order granting a motion for a new trial, the trial court, as well as this court, cannot, in determining whether a motion for a directed verdict should be granted, be guided by the rules applicable in determining a motion for new trial. (*McCarthy* v. *Pacific Elec. Ry. Co.,* 82 Cal. App. 503 [255 Pac. 868].)

In the light of the decisions and the facts related, the question of the negligence of the defendants and the contributory negligence of the plaintiff should have been submitted to the jury under proper instructions.

The judgment is reversed and the cause remanded for a new trial.

Barnard, P. J., and Marks, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 7, 1941. Edmonds, J., voted for a hearing.