[Civ. No. 13142.   First Dist., Div. One.   May 9, 1947.]

CHARLES S. SIMON, Appellant, v. CITY AND COUNTY
OF SAN FRANCISCO et al., Respondents.

Melvin M. Belli, Guernsey Carson, Van H. Pinney and L. Barbara Berry for Appellant.

John J. O'Toole, City Attorney, Thomas C. Ryan and A. Dal Thomson, Deputy City Attorneys, for Respondents.

PETERS, P. J.—Plaintiff has appealed from a judgment based on a directed verdict for defendants, and from the order denying his motion for a new trial. The latter is not an appealable order and the appeal therefrom should be dismissed.

The action was brought by plaintiff to recover for personal injuries received by him when he was hit by a streetcar operated by the city, it being alleged that the proximate cause of the accident was the negligent operation of the streetcar by defendants. The defendants, in addition to denying their negligence, affirmatively alleged contributory negligence on the part of plaintiff. At the close of defendants' case the trial court granted defendants' motion for a directed verdict.

The accident happened about 12:30 a. m. on February 1, 1944. Plaintiff, who was 33 years of age in 1944, testified that, prior to the accident, he had worked as a civilian employee in the South Pacific for about eighteen months, working seven days a week, for from ten to fourteen hours per day; that he arrived in Oakland from Honolulu around noon on January 31, 1944, and then came over to San Francisco; that he and a friend, who had arrived with him from Honolulu, first checked in with the U. S. Engineers' office and then the two secured a room at a hotel; that he slept until about 5:30 p. m. and then went to supper with his roommate; that he had one bottle of beer with his meal and prior and subsequent thereto had nothing else to drink; that he has not used whiskey or wine for five years; that after finishing his meal he walked, alone, to the Jewish Center at California Street and Presidio Avenue in San Francisco; that he arrived there between 8 and 9 p. m. and read various publications in the library until about 11 or 11:30 p. m.; that he then started to walk to his hotel. He described his route with some clarity and testified that he finally arrived at Steiner and Geary Streets. From this point on, his memory failed. He testified on direct examination when asked what he did after that: "I cannot just remember exactly, . . . As far as I can remember, the best I can, I walked down Steiner and I got as far as the curb, and I looked both ways before I go to cross the street. And

I did not hear anything. That is all I remember. Two months later I woke up unconscious in the hospital." On cross-examination he testified that he had no recollection of the streetcar hitting him. As a result of being hit by the streetcar he suffered serious head and bodily injuries, and various broken bones. He was in a comatose condition for about eight days and stayed in the hospital until March 23, 1944.

Plaintiff next called Leo Mahoney, motorman of the street-car, purporting to act under section 2055 of the Code of Civil Procedure. Counsel for the city objected to Mahoney being called as an adverse witness on the ground that Mahoney was not a party to the action and had not been served with summons. At that time Mahoney's name did not appear in the complaint, the defendants being designated as: "City and County of San Francisco, a municipal corporation, Municipal Railway Company, a corporation, First Doe and Second Doe." Counsel for the city admitted, of course, that Mahoney could have been declared to be the First Doe, and summons could have been served upon him, but contended that since this had not been done, he was not a party, and therefore could not be called under section 2055. The trial court sustained the objection, but suggested that the pleadings be amended to include the name of the motorman and the conductor in the place of the First and Second Doe. During the discussion it developed that prior to trial plaintiff, purporting to act under section 2055, had taken the depositions of the motorman and conductor, that at those hearings the witnesses were represented by counsel for the city, and that the city had not raised any objection to the taking of such depositions. Plaintiff, thereupon, moved to amend the complaint by substituting the names of the motorman and conductor for the two Does. This motion was granted, and the court thereupon permitted Mahoney to be called by plaintiff as an adverse witness. The propriety of this ruling will be discussed later in this opinion.

Mahoney testified that at the time of the accident he had been a motorman for about six years; that his hearing and eyesight were good; that at the time of the accident the street-car was in good working condition and that all the lights were on; that the fender was down and protruding in a normal manner in front of the streetcar; that the night in question was clear and he could see an object, the size of a

man, at least two hundred feet down the track; that the accident happened about three hundred feet west of the intersection of Steiner and Geary Streets at approximately 12:30 a. m.; that the streetcar was then proceeding west toward the beach; that he was not late or in a hurry, although the car was crowded; that he was not talking to any of the passengers; that he first saw plaintiff about one hundred feet in front of the car; that at this time the streetcar was going "full speed," which he later fixed at about eighteen miles an hour; that plaintiff was then standing on the northern rail of the inbound track facing the oncoming streetcar; that this track is approximately five feet from the tracks upon which the streetcar was proceeding; that he could see that plaintiff was an adult person and that he appeared to be in possession of his senses; that he did not ring his bell or slow down, but continued at "full speed"; that when the streetcar was approximately fifteen feet from plaintiff, Simon lurched forward; that plaintiff took two or three steps as if to regain his balance; that these steps were taken in the direction of the streetcar; that he, Mahoney, immediately applied his brakes, but the left front of the streetcar came into contact with the whole of the right side of Simon's body; that it took the streetcar approximately sixty-five feet in which to come to a stop; that he could have stopped in less than the one hundred feet after he first saw plaintiff, but believed that this was unnecessary as plaintiff was not on his track but was standing about five feet from his track and apparently looking toward the streetcar. Mahoney denied telling a policeman, or anyone else, immediately after the accident, that he saw plaintiff cross from the north to the south side of the street directly in front of him, and that then plaintiff was hit.

Over the objection of the attorney for defendants, plaintiff was then permitted to introduce into evidence two rules and regulations of the railway company, and to question Mahoney about them. One rule provides that a "car must be run slowly while passing . . . pedestrians . . . near the track." The other rule requires that the "gong must be sounded repeatedly when approaching . . . pedestrians . . . near tracks."

Mahoney testified that he knew of the rules; that his interpretation of the first rule was that it means to slow down if the pedestrian is near the car, but that the rule does not apply to a man standing in a place of safety and facing the

car; that the second rule only applies when you are coming close to a pedestrian and think he did not see the car, but that such rule was not applicable to pedestrians who are stopped in a place of safety and looking toward the streetcar.

A police officer connected with the accident prevention detail, and who appeared on the scene immediately after the accident, was next called by plaintiff. He testified that he had a conversation with Mahoney immediately after the accident and that Mahoney then told him that plaintiff had come from the north side of the street and had crossed to the south in front of the streetcar, and then turned around and staggered or fell against the left front corner of the streetcar. His report then prepared so stated, but it did not state that Mahoney had given him that information. The officer was cross-examined and his identification of Mahoney as his informant was somewhat weakened, but it is a reasonable interpretation of his testimony that to the best of his recollection Mahoney had been his informant.

Mahoney was then recalled by Simon, and he admitted that it would have been a violation of the rules not to have slowed down or not to have sounded his gong if plaintiff had crossed in front of his car and then started back. He was most positive, however, that he had not told the officer the facts testified to by the officer, and denied talking to him.

This closed the plaintiff's case. The city thereupon moved for a nonsuit on the grounds (1) that the evidence failed to show any negligence on the part of defendants, and (2) that the evidence showed, as a matter of law, that the plaintiff was guilty of contributory negligence. The motion was denied.

As their first witness defendants produced one Kolish who, on the night of the accident, operated a service station at the corner of Steiner and Geary Streets. He testified that on that night he closed his station shortly after midnight and started to walk to his home which was on Geary Street; that as he was walking along the north side of Geary just beyond Steiner he observed plaintiff; that as the witness approached, plaintiff turned toward the street and started to urinate; that no one else was then on the streets; that he, the witness, did not want to pass plaintiff and so he crossed to the other side of the street; that plaintiff started to follow the witness and started to call and mumble; that plaintiff was then staggering and stumbling; that he, the witness, hurried toward his home on the south side of Geary Street between Steiner

and Scott Streets and entered through the garage; that he then heard someone, whom he assumed to be plaintiff, hammering on the garage doors; that in a few moments the hammering stopped; that immediately thereafter he heard streetcar brakes and went outside and saw plaintiff lying in the street, injured; that he then told the conductor that the injured man had followed him from the north to the south side of Geary Street a few moments before; that he did not have the slightest doubt that plaintiff, at the time of the accident, was drunk.

The conductor, called by the defendants, substantiated the motorman's story as to speed, and that the lights on the car were lit. He also testified that Kolish told him that the injured man just prior to the accident had crossed from the north to the south side of Geary Street and that he, the conductor, told that story to the officer who had testified for plaintiff.

The ambulance steward at the scene of the accident testified that Simon had a "heavy alcoholic" breath; one of the officers who arrived at the scene testified that Simon's breath was "very alcoholic"; and another officer testified that at the emergency hospital Simon had a "strong alcoholic" breath.

The defendants' counsel then introduced into evidence various sections of the San Francisco Municipal Code and of the Vehicle Code. These were to the effect that streetcars must always be operated at a speed that is reasonable and prudent under the circumstances, and so as not to endanger persons or property, but, subject to these limitations, may be operated at a speed of twenty-five miles per hour in a business or residence zone; that pedestrians must cross streets at right angles to the curb, and if they cross at other than the crosswalk, they must yield the right of way to vehicles.

Aside from the medical testimony, which is not here relevant, this fairly summarizes the evidence produced by each side. The defendants thereupon moved for a directed verdict on the same grounds urged in support of the motion for a nonsuit. The plaintiff likewise moved for a directed verdict on the issue of liability. The court granted the motion of defendants, and, pursuant to the direction of the court, the jury brought in its verdict for defendants. Judgment was entered on the verdict, and, after denial of plaintiff's motion for a new trial, this appeal was taken.

It is now too well settled to require extended discussion that in passing on a motion for a directed verdict the

power of the trial court is strictly limited. It has no power to weigh the evidence, but must view all the evidence in the light most favorable to the party against whom the direction is asked, and accept every inference and presumption in his favor that can reasonably be drawn from the evidence. (*Estate of Flood,* 217 Cal. 763 [21 P.2d 579]; *Hoppe* v. *Bradshaw,* 42 Cal.App.2d 334 [108 P.2d 947]; *Kataoka* v. *May Dept. Stores Co.,* 60 Cal.App.2d 177 [140 P.2d 467]; *Anthony* v. *Hobbie,* 25 Cal.2d 814 [155 P.2d 826]; *Turner* v. *Lischner,* 52 Cal.App.2d 273 [126 P.2d 156], and cases there cited.)

Tested by these standards there can be no reasonable doubt but that in granting the directed verdict the trial court invaded the province of the jury. It cannot be held, as a matter of law, that the evidence was insufficient to show negligence on the part of defendants. There is ample evidence from which the jury could have found that defendants were negligent. In the first place the jury could have found that the motorman violated the company rules, and it was entitled to consider that fact in determining whether the motorman's conduct constituted negligence. It is obvious that whether such rules were violated by the conduct of the motorman is, under the circumstances, a question of fact. Defendants argue that the rules of a carrier are not admissible and may not be considered on the issue of a carrier's negligence where the injured party has no knowledge of the rules and did not rely upon them. That was undoubtedly the rule announced in *Smellie* v. *Southern Pac. Co.,* 128 Cal.App. 567 [18 P.2d 97], by the District Court of Appeal, but, the Supreme Court, in denying a hearing in that case added the following comment (p. 583): "Such denial, however, shall not be construed as an approval by this court of that portion of the opinion of the District Court of Appeal which holds that admission of evidence of the rules adopted by the defendant for the government of its business was incompetent and prejudicial." In thus qualifying the appellate court opinion the Supreme Court undoubtedly had in mind its earlier decision in *Gett* v. *Pacific G. & E. Co.,* 192 Cal. 621 [221 P. 376]. In that case, the court, after referring to the action of the motorman of defendant's streetcar in suddenly stopping his car in such manner as to blockade a cross-street stated (p. 625): ". . . his act in so doing was in violation of an operating rule of the defendant, forbidding its employees to stop the cars so as to block cross-streets or cross-walks. The existence of this rule, of course, did not render

its violation by defendant's employees negligence *per se,* but it was a circumstance proper to be considered by the jury in determining whether or not they were negligent.''

In the more recent case of *Nelson* v. *Southern Pacific Co.,* 8 Cal.2d 648 [67 P.2d 682], the Supreme Court negatively reaffirmed the doctrine of the Gett case in the following language (p. 654): ''It cannot be said that the exclusion of the respondent's time table was erroneous. While the rules of operation are admissible (*Gett* v. *Pacific Gas & Elec. Co.,* 192 Cal. 621 [221 P. 376], . . .), we fail to see the materiality of the time table to the situation under scrutiny.'' It follows that the rules were admissible and that it was a question of fact for the jury and not a question of law for the court to determine whether the conduct of the motorman, under the circumstances, constituted negligence.

██ Moreover, regardless of the rules, it cannot be held that the action of the motorman in proceeding at full speed and failing to ring his gong after seeing plaintiff standing only five feet from his tracks was the exercise of due care as a matter of law. Whether such action was or was not negligence was obviously a question of fact for the jury.

██ It is just as clear that it cannot be held, as a matter of law, that plaintiff was guilty of contributory negligence proximately causing the injuries. These are questions of fact that should have been submitted to the jury. The evidence most favorable to plaintiff shows that, as a result of the accident, he is unable to remember just how the accident occurred. It is now well settled in this state that where a plaintiff by reason of loss of memory is unable to testify respecting his conduct at and immediately before the time of the accident, and produces no witnesses who testify to such facts, he is entitled to the benefit of the presumption that he was exercising due care. This presumption is itself evidence sufficient to create a conflict with the evidence produced by defendant, and requires that the issue of contributory negligence be submitted to the jury. ██ Evidence produced under section 2055 of the Code of Civil Procedure is adverse and cannot be weighed, as a matter of law, against the presumption. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 P. 529]; *Hoppe* v. *Bradshaw,* 42 Cal.App.2d 334 [108 P.2d 947]; *McNear* v. *Pacific Greyhound Lines,* 63 Cal.App. 2d 11 [146 P.2d 34]; *Satariano* v. *Sleight,* 54 Cal.App.2d 278 [129 P.2d 35]; *Scott* v. *Sheedy,* 39 Cal.App.2d 96 [102 P.2d 575].)

■ The defendants, while recognizing the existence of the above rule, contend that it has no application where the plaintiff either through his own testimony, or that of his witnesses, discloses the acts and conduct of the injured party immediately prior to and at the time of the accident. In such case the presumption has no basis upon which to operate. (*Mar Shee* v. *Maryland Assurance Corp.*, 190 Cal. 1 [210 P. 269]; *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590]; *Speck* v. *Sarver*, 20 Cal.2d 585 [128 P.2d 16].)

The defendants recognize that so far as plaintiff's own testimony is concerned the presumption would apply, but they contend that Mahoney testified to the facts of the accident and that plaintiff is bound by his testimony. They admit that, normally, testimony produced under section 2055 of the Code of Civil Procedure does not rebut the presumption as a matter of law, but they contend that Mahoney was never made a party to the proceeding by service of process, that he was, therefore, not an adverse party, and plaintiff is bound by his testimony. No authority is cited for this somewhat startling conclusion. The trial court granted plaintiff's motion to amend the complaint by substituting Mahoney's name for one of the Does, and then ruled that Mahoney could be called as an adverse witness. Just how defendants, who have not appealed, can now urge that the trial court committed error, does not appear. Normally, a respondent is precluded from urging error on an appeal and there appears to be no reason urged or argued why that rule should not here apply.

If it be assumed that the point can now be urged, it is quite clear that the ruling of the trial court was correct and well within its discretionary powers. ■ Service of summons is not indispensable to make a defendant a party. Amendment to the pleadings may be an appropriate method to accomplish this result in a proper case. (*Union Tank etc. Co.* v. *Mammoth Oil Co.*, 134 Cal.App. 229, 232 [25 P.2d 262].)

■ Of course, the orderly way for plaintiff to have proceeded was for him to have had Mahoney's name substituted for that of Doe by proper amendment and service under section 474 of the Code of Civil Procedure as soon as he discovered his true identity. Plaintiff made this discovery at least at the time the deposition of Mahoney was taken. But his failure to take the proper steps at that time should not preclude him from the benefits of section 2055 at the time

of trial, where there is no showing of injury or prejudice either to Mahoney or to the other defendants. ■ Whether the pleading should have been amended and whether the plaintiff was acting in good faith or was attempting to abuse the fictitious defendant statute, were questions resting primarily with the trial court. (*Day* v. *Western Loan & Bldg. Co.*, 42 Cal.App.2d 226 [108 P.2d 702].) In the instant case the attorney for the city allowed Mahoney's deposition to be taken under section 2055 without objection. Had objection then been made plaintiff could have taken the proper steps before trial to have made Mahoney a formal party defendant. But counsel sat back and made no objection, and then sought to take advantage of this oversight of plaintiff at the time of trial. The trial of a law suit is not a game where the spoils of victory go to the clever and technical regardless of the merits, but a method devised by a civilized society to settle peaceably and justly disputes between litigants. The rules of the contest are not an end in themselves. Unless the rules tend to accomplish justice, strict compliance is not always required. Here the ends of justice would have been defeated had the trial court refused to have permitted Mahoney to be called as an adverse witness until after he had been formally served with summons and perhaps given ten days to answer—and this is in a situation where Mahoney and the other defendants could not and did not suggest how he or they could have been prejudiced by the ruling. Under the circumstances, the ruling of the trial court was clearly correct. This being so, plaintiff was entitled to call Mahoney as an adverse witness and was not bound by his testimony. It follows that plaintiff was entitled to the presumption heretofore mentioned and that it was error for the trial court to have determined that plaintiff was guilty of contributory negligence as a matter of law.

There is an additional reason why the granting of the directed verdict was erroneous. Even if it be conceded, contrary to the fact, that plaintiff was guilty of contributory negligence, such would not bar him from relief unless such contributory negligence was the or a proximate cause of the accident. Under the facts of this case plaintiff would clearly have been entitled to instructions on the doctrine of last clear chance, so that even if contributively negligent the jury could have found that the motorman had the last clear chance to avoid the accident, and that such failure was the proximate

cause of the accident. The elements of the last clear chance doctrine are well settled and need not be discussed at length in this opinion. (See *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915]; *Gillette* v. *City and County of San Francisco*, 58 Cal.App.2d 434 [136 P.2d 611]; *Bailey* v. *Wilson*, 16 Cal. App.2d 645 [61 P.2d 68]; *De Fries* v. *Market St. Ry. Co.*, 31 Cal.App.2d 463 [88 P.2d 256]; *Paolini* v. *City & County of S. F.*, 72 Cal.App.2d 579 [164 P.2d 916].)

In the present case it is probably true that the evidence of plaintiff and the evidence of Mahoney would not be sufficient to raise the last clear chance doctrine. That is so because plaintiff testified that he was sober, and Mahoney testified that until just before the moment of impact, and too late to prevent it, plaintiff was in an apparent place of safety and was not in an apparent position of peril. Such facts would probably have precluded the doctrine from applying. (*Dalley* v. *Williams*, 73 Cal.App.2d 427 [166 P.2d 595].) But that is not the only evidence in the case. ▮▮ Through the witness Kolish the defendants make plaintiff out very drunk indeed. They have him staggering and stumbling over the street, mumbling to himself, hardly able to maintain his balance. Through other witnesses they have him possessing a "heavy," a "very" and a "strong" alcoholic breath. The defendants perhaps proved too much, at least as far as the last clear chance doctrine is concerned. If just before the accident plaintiff was so drunk that he was staggering and stumbling and hardly able to maintain his balance, it is a reasonable and permissible inference that he was staggering and stumbling during the period after he was observed by Mahoney, and that was at least one hundred feet before the accident. If Mahoney saw plaintiff staggering and stumbling five feet from the tracks on which the streetcar was approaching, then plaintiff was in a place of peril from which, because of his condition, he could not extricate himself. Under these circumstances the common sense observations of Mr. Justice Seawell in the case of *Coakley* v. *Ajuria*, 209 Cal. 745, 751 [290 P. 33], are peculiarly applicable. It was there stated: "In *Robinson* v. *Pioche*, 5 Cal. 461, this court very early had occasion to consider the same question presented by the instant case, and it was held that a person who voluntarily incapacitates himself by drink does not by reason of his intoxication place himself so far beyond the pale of the law that he may be injured with impunity. It then curtly but

pointedly disposed of the case in this brief fashion: 'If the defendants were at fault in leaving an uncovered hole in the sidewalk of a public street, the intoxication of the plaintiff cannot excuse such gross negligence. A drunken man is as much entitled to a safe street, as a sober one, and much more in need of it.' '' In the Ajuria case the decedent fell to the street in a drunken stupor voluntarily induced. The defendant, while negligently operating his automobile, ran over and killed the plaintiff's decedent. The trial court granted a nonsuit on the ground that decedent's intoxication constituted contributory negligence as a matter of law. The judgment was reversed on the ground that, although intoxication may be contributory negligence, whether it is a bar depends upon whether such negligence is the immediate or the remote cause, or whether the negligence of the defendant was the sole proximate cause under the last clear chance doctrine, and that such questions should have been submitted to the jury. The reasoning of that case is directly applicable here.

The order denying a new trial being nonappealable, the appeal therefrom is dismissed; the judgment based on the directed verdict is reversed.

Ward, J., and Bray, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 7, 1947. Edmonds, J., Traynor, J., and Schauer, J., voted for a hearing.