LUCILLE RURSCH, Appellee, v. CLYDE CHESTER GEE, Appellant.

No. 46904.

DECEMBER 17, 1946.

Jordan & Jordan, of Cedar Rapids, for appellant.

John D. Randall, of Cedar Rapids, for appellee.

MULRONEY, J.—The plaintiff, owner of a 1941 Ford truck, sued the defendant for damages to her truck sustained in a collision with defendant's truck, and for damages she sustained by reason of her truck being withdrawn from service during the period it was being repaired. The defendant answered denying liability and cross-petitioned for damages to his truck and for damages he sustained by reason of his truck being withdrawn from service during the period it was being repaired.

The petition and cross-petition alleged negligence on the part of the operator of the other truck in failing to have his truck under control; in failing to yield one half of the traveled way to the other vehicle; and in driving in such a manner as to cause the collision. In addition, the petition alleged negligence in the defendant's operator failing to keep a lookout and the cross-petition alleged negligence in plaintiff's operator failing to sound a horn at the place of the accident and in failing to operate plaintiff's truck at the time and place of the accident with due regard to the condition of the highway and the condition of the traffic thereon. Both pleadings alleged freedom from contributory negligence. The trial resulted in a verdict for plaintiff for $1,073.63 and defendant appeals.

The record shows that plaintiff's truck was operated by her husband, Marion Rursch, and defendant's truck was operated by Richard Carley. Both trucks were being operated in a gravel-hauling project near Fairfax, Iowa. The following is Rursch's testimony:

He was driving west with a full load of gravel, on a gravel highway, on the afternoon of December 21, 1944. The day was clear but the road was icy and the ground was covered with snow. It had thawed a little during midday but it was starting to freeze again. The road was straight and there was a Dodge truck traveling in the same direction about five or six hundred feet ahead of him. He saw the defendant's truck traveling toward him on the same highway when it was about half a mile away. He saw the defendant's truck go around a little bend in the road and noticed it skid a little and then straighten out and come down the highway toward him. He estimated the speed of defendant's truck at around fifty or fifty-five miles an hour and his own speed at about twenty miles an hour. He was as far over to the right as he could get when he undertook to pass defendant's oncoming truck and there was plenty of room for defendant's truck to pass but defendant's truck, as he stated, "came right at me and hit the back end of my truck." He ended up in the ditch along his right or north side of the road, but defendant's truck traveled on about eighty or ninety feet and stayed on the road.

Richard Carley, defendant's driver, was seventeen years old at the time of the accident. The following is his version of the accident: He was returning to the quarry with defendant's empty truck when he first noticed the Dodge truck ahead of him. He could not see plaintiff's truck behind the Dodge for, as he stated, "it was following the Dodge so close I couldn't see him on account of the snow that was on the ground that the Dodge was blowing up." He knew there was a hump or bump in the road on the south side just east of the little culvert so he slowed up to let the Dodge go by. He was as far to the right as he could go but when plaintiff's truck struck this hump it threw the back end of his truck into the back end of defendant's truck. He went on into the ditch on the south side but got back upon the road before he stopped. He estimated his speed at twenty-five or thirty miles an hour before he reached the place of collision and not over twenty miles an hour at the time of the collision. He did not see plaintiff's truck because of the flying snow but the Dodge was going between forty and forty-five miles

an hour and plaintiff's truck was ten or fifteen feet behind the Dodge.

The repair bills on the two trucks were the subject of a stipulation between the parties. Plaintiff testified that she owned the Ford truck and that her business was "trucking"; that she ran two trucks, with her husband driving one and she driving the other; that she had rented out a truck "last fall"; that she had operated these trucks for a period of three years, and by virtue of her previous experience she was familiar with the value of loss of use of trucks on or about the date of the accident in the area where the accident occurred. Over defendant's objection on the ground that her testimony was "incompetent, irrelevant and immaterial, not a proper measure of damages," she was allowed to state the value of such loss of use would be "around $30 a day." There was evidence showing she was without the use of her truck while it was being repaired for a period of sixty-six days.

Defendant's testimony was to the effect that the value of the loss of use of his truck (which was of about the same value as plaintiff's truck) in the area and at the time of the accident would be $20 a day.

I. Defendant assigns error in the court's ruling permitting plaintiff to testify as to the value of the loss of use of the truck. Defendant argues the ruling was error "for the reason that the witness was not shown qualified to testify as to the value per day." The objection to her testimony was not on the ground that she was not qualified. She owned the truck. She had rented out her truck before she was in the trucking business. Her evidence as to the value per day of the use of the truck was clearly competent under our pronouncement in Kohl v. Arp, 236 Iowa 31, 17 N. W. 2d 824.

II. Defendant submitted eleven requested instructions, all of which were refused, and he assigns error in refusal of the court to give nine of the requested instructions. He also excepted to ten of the twenty-two instructions given and now assigns error in the giving of Instructions Nos. 1, 19, and 20. It would unduly lengthen this opinion were we to discuss all of the requested instructions and show that where they did correctly state a proper instruction the same was embodied in the instructions

given. The instructions given were reciprocal and applicable to both parties in the case each had against the other. The requested instructions were in the main favorable only to defendant's action against plaintiff. We find no error in the refusal to give the instructions requested.

III. Instruction 19 was excepted to and the error asserted is that it permitted the jury to speculate and use their own experience in the place of evidence as to the reasonable cost and expense of making repairs. The instruction was as follows:

"In the event your verdict is for the plaintiff upon her petition, or for the defendant upon his cross-petition, in determining the amount of damages either is entitled to against the other, you have a right to use your judgment and experience, if any, of the reasonable cost or expense of repairing trucks, and of the reasonable value of the use of a truck, in connection with the testimony as to such values which has been given by the witnesses. By this is meant you are not obliged to rely wholly upon the opinions of the witnesses as to such values, but that in connection with such opinions you may use and be guided by your own judgment of such matters in reaching your conclusions. This does not mean that you are to arbitrarily disregard all evidence and fix such values according to your own views, but you should use your own knowledge only in connection with the evidence."

This did not encourage the jury to disregard the evidence as to the cost of repairs. It permitted them to use their judgment and experience, if they had any, in connection with the evidence, not in place of the evidence. Almost an identical instruction was approved in Hoyt v. Chicago, M. & St. P. Ry. Co., 117 Iowa 296, 301, 90 N. W. 724. We find no error in the instruction.

IV. The error assigned with respect to Instruction No. 20 is that it conflicted with 19. In Instruction 20 the court gave general instructions to the jury as to their duty to follow the instructions of the court: "not [to] refer to, discuss or consider any testimony that has been stricken out, nor anything in connection with this case, except the evidence received upon the trial between these parties, and the instructions of the court." It told the jury to base their verdict solely upon the evidence as

between these parties and "be guided by these instructions." The conflict defendant sees is that in 19 the jury could use their experience and in 20 the court told them the verdict must be based solely upon the evidence. There was no conflict. As we have said, Instruction 19, in telling the jury they could evaluate the evidence of repairs, in the light of their own experiences, if any, did not tell them to ignore the evidence. Under the two instructions the jury was told to base their verdict on the evidence but they could use their own experience in considering the repair evidence.

V. During the course of the trial when defendant's counsel was cross-examining Rursch as to whether the repair bills on plaintiff's truck had been paid and, if so, who paid them, plaintiff's counsel interposed several objections and finally asked to be heard on the matter. When the jury was excused at the suggestion of defendant's counsel, plaintiff's counsel stated to the court that he would "make it unnecessary for counsel to interrogate the witness by conceding that a collision insurer paid a part of the cost of the repairs" of plaintiff's truck. There was further colloquy between counsel, ending with the question asked by defendant's counsel:

"Well, if the Court please, in order to get everything before the Court, can it also be conceded here, so that the question will be right here, that this insurance company, the collision carrier, with the $50 deductible paid these bills and became subrogated to the rights of the claimant to collect the bill from the third party?"

And the reply of plaintiff's counsel:

"For the purpose of showing the record to the Court and for the purpose of showing the Court the exact situation and the reason for counsel making the objections which have been made, counsel for the plaintiff will concede that an insurance company paid all but $50 of the bills Plaintiff's Exhibit 1 and Plaintiff's Exhibit 3, and became subrogated to the rights of the plaintiff in connection with those bills."

One of defendant's assignments of error raised by a motion for directed verdict and exception to Instruction No. 1 is that the foregoing concession shows that plaintiff is not the real

party in interest as to a part of the repair bill in that the concession of plaintiff's counsel shows payment of part of the repair bill by the collision insurer and the subrogation of the insurance carrier to plaintiff's rights with respect to such payment. Defendant's argument is that plaintiff's counsel's concession goes further than a showing of payment by the insurer. It shows that by said payment the insurer "became subrogated" to the rights of plaintiff; that therefore plaintiff's rights in the portion of the bills paid by the insurer ceased to exist and as to said bills she is not the real party in interest. We are not disposed to attach any particular importance to the language used wherein plaintiff conceded that the collision carrier "became subrogated" by the payment of a portion of the repair bill. The collision carrier became subrogated by operation of law when it made the payment. And this would be true whether the collision-insurance policy expressly provided for subrogation or not. Patitucci v. Gerhardt, 206 Wis. 358, 240 N. W. 385; Home Ins. Co. v. Bishop, 140 Maine 72, 34 A. 2d 22. But plaintiff's counsel seems to argue that a collision policy is like an accident policy, which has been held to be an investment policy allowing recovery by the insured from the tort-feasor and the insurer. The authorities do not so hold. The automobile collision policy is like a fire-insurance policy. Both are for the purpose of indemnifying the insured against loss by reason of a specified hazard. In the field of fire insurance the rule governing subrogation is well settled. The payment of the loss by the insurer operates as an assignment to the insurer of the rights of the insured against the tort-feasor responsible for the destruction of the property. See Russell v. Chicago, M. & St. P. Ry. Co., 195 Iowa 993, 191 N. W. 806, 192 N. W. 267. The same rule of subrogation governs in the case of collision insurance. Patitucci v. Gerhardt, supra; 50 Am. Jur. 706; Townsend v. Halbert, 54 N. Y. S. 2d 501. In Moultroup v. Gorham, 113 Vt. 317, 320, 34 A. 2d 96, 98, the court, speaking of a collision policy stated:

"An insurance policy is a contract of indemnity and to the extent that the insurer was obligated to pay, it was put in the place of the insured and so obtained a right to recover of the defendant in the name of the administratrix of the insured's

estate. The right of the insurer against the defendant does not rest upon any relation of contract or privity between them. It arises out of the nature of the contract of insurance as a contract of indemnity, and is derived from the insured alone, and can be enforced only in his right and must be worked out through the cause of action which the insured had. Cushman & Rankin Co. v. Boston & Maine R. R., 82 Vt. at page 395, 396, 73 A. 1073, 18 Ann. Cas. 708; Ide v. Boston & Maine R. R., 83 Vt. 66, 86, 74 A. 401.''

In Caligiuri v. Des Moines Ry. Co., 227 Iowa 466, 288 N. W. 702, this same factual situation was alleged in defendant's answer and the same legal contention urged. The trial court overruled it and on appeal that decision was affirmed. In that case we squarely held the subrogee was not a necessary party and by necessary implication that defendant could not be prejudiced by the subrogee's absence. That conclusion seems inescapable in view of the conceded principle that forbids the splitting of causes of action.

The subrogee may protect his rights by intervention (Cawley v. People's Gas & Elec. Co., 193 Iowa 536, 549, 187 N. W. 591) and in other ways, perhaps, but as against him the defendant needs no protection. This appeal is by defendant. We are not concerned with protection to subrogee.

Finding no reversible error, the judgment is affirmed.— Affirmed.

All JUSTICES concur.