268 P.2d 968

SOUTHERN PAC. CO. v. BACA et al.
No. 5749.

Supreme Court of Arizona.
April 5, 1954.
Rehearing Denied April 20, 1954.

Evans, Hull, Kitchel & Jenckes, Norman S. Hull & Ralph J. Lester, Phoenix, for appellants.

William Burke, Tempe, for appellees.

PHELPS, Chief Justice.

This is an appeal from a judgment of the superior court in favor of plaintiffs-appellees and against defendants-appellants and from an order denying defendants' motion for judgment n. o. v. and motion for a new trial.

The plaintiffs were injured as a result of a collision between a truck traveling east on West Eighth Street in Tempe in which they were riding, and the Railroad's scheduled southbound freight train No. 370 at a point where the tracks of the Railroad cross West Eighth Street. The incident occurred at approximately 8:15 o'clock on the morning of October 18, 1951. Eighth Street is the only east-west street crossing the railroad tracks within the corporate limits of Tempe that is paved and consequently has the heaviest traffic of any of such east-west streets. The railroad through Tempe constitutes a mainline artery of traffic over which a goodly number of trains run every day. Where the railroad crosses West Eighth Street there are double tracks, one of which is the mainline and the other is a siding or passing track.

The Railroad, as a safety precaution, at some time previous to this occurrence (the records do not show when) had installed on each side of its tracks at their intersection with West Eighth Street, electric flashing lights and bell ringing signals which were in working condition and were working on the morning the collision occurred. The Railroad's passenger train No. 1 known as the Golden State Limited passed through Tempe northbound about 8:02 a. m. At that time there was standing on the passing track a northbound freight train, the rear end of the caboose of which was approximately 80 feet north of Eighth Street. This was beyond the electric contact points which were designed to activate the Eighth Street electric signals above described. These contact points were located approximately 50 feet from the Eighth Street crossing on the passing track but were several hundred feet distant from said crossing on the main line. The conductor of the northbound freight train which had pulled in on the siding for the Golden State Limited and the southbound freight train to pass, stated that it was his duty to see that the caboose had cleared the contact points before stopping the train and that the electric signals had ceased to operate when his train came to a stop, and that his train stopped on the

siding at 7:50 a. m. where it remained until 8:20 a. m. when it pulled out.

Gabriel Baca, Sr., was the driver of the truck in which he and his four children were riding at the time of the collision with defendant Railroad's train. He and his 15-year-old daughter who was seated on the front seat with him and a baby girl, testified that the electric signals maintained by the Railroad at the Eighth Street crossing were flashing and the bell ringing when they were at least a block away and continued to do so at all times up to and including the time he was struck by the engine of the Railroad's southbound freight train No. 370. They stated that Baca drove his truck up to within 25 feet of the nearest railroad track and stopped and remained standing for about two minutes when one of four section men who were engaged in doing track and roadbed work at that point, signalled him ahead (the section men denied they signalled him ahead. One of them, Urias by name, testified he shouted at him to stop and tried to wave him down); that he proceeded to drive across the siding track and on to the mainline track at a speed of about four or five miles per hour; that he was struck by the engine of the freight train while on the mainline track. He stated that he did not see the engine of the freight train until it was within 40 feet of him, but Baca testified that the train was traveling at a speed of 35 to 40 mph; that he made this estimate during the split second that he saw the engine coming toward him.

Another witness working in the O'Malley Lumber Yard about 125 feet from the crossing testified that he paid no attention to the train until he heard the crash and when he looked around the engine was about 15 feet south of Eighth Street pushing the truck ahead of it at a speed he estimated at about 30 mph; that the train came to a stop about 15 feet north of Ninth Street which according to the evidence was approximately 500 feet south of Eighth Street. He could see pieces of the truck being strewn along the railroad tracks between Eighth and Ninth Streets. These are the only witnesses for plaintiffs who testified as to the speed of train No. 370. The engineers of both train No. 370 and the northbound freight standing on the siding at the time, testified that No. 370 was going from 15 to 20 mph. This was corroborated by the testimony of the fireman and the conductor on the northbound freight train. These witnesses all took particular note of its speed. Other witnesses not connected with defendant fixed the speed at about 20 mph.

The truck was totally destroyed and Gabriel Baca, Sr., suffered a broken back. His ten-year-old son Gabriel Baca, Jr., was killed and the three other children suffered minor injuries.

Gabriel Baca, Sr., and his wife Ida C. Baca, brought this action for damages for

injury to Gabriel Baca, Sr., and also on behalf of the estate of Gabriel Baca, Jr., deceased. Ida C. Baca joined in said action as guardian ad litem of Cecelia Baca, Regina Baca, and Amalia Baca, minor children of Gabriel Baca, Sr., and herself, to recover damages for injuries suffered by them as a result of said collision.

Plaintiffs allege that defendants were negligent in the operation of train No. 370 in that on said 18th day of October, it exceeded the speed limit of 20 mph through the town of Tempe; that the engineer did not blow the whistle or ring or cause to be rung the bell on said engine in approaching the crossing at West Eighth Street; that plaintiff Baca was signalled by one of the section hands then working on the road at said intersection to proceed across the railroad tracks and that the view of trains going south through said town was blocked by large trees and section houses west of the railroad siding and north of Eighth Street, all of which when considered together, amounted to grossly unreasonable, reckless and wanton negligence. Defendants denied all of the allegations of the complaint not expressly admitted and alleged as an affirmative defense that the collision was due solely to the negligence of Gabriel Baca, Sr., or contributed thereto by him, in carelessly and negligently driving upon the railroad tracks at a time and place of danger in complete disregard of the warnings and signals given by the Railroad, and others,

of its tracks and of the approaching train, but that he failed to stop, look and listen or to take any precaution for the safety of himself and others. The case was tried to a jury and a verdict and judgment in the sum of $35,000 in favor of plaintiffs resulted.

Defendants assert that the court erred:

1. In refusing to grant its motion for a directed verdict at the close of all the evidence;

2. In refusing to grant judgment. n. o. v.;

3. In refusing to charge the jury that it may not take into consideration the acts or omissions of the section hands as actions or omissions of the defendant;

4. In charging the jury on wanton negligence upon the ground that there was no evidence of wanton negligence shown.

We are of the view that the court correctly denied defendants' motion for an instructed verdict because the evidence was in some conflict on the speed of the train involved, which was a question of fact for the jury. If it was exceeding 20 mph through Tempe it was violating the law and was therefore guilty of negligence per se and whether such excessive speed, if such did occur, was the proximate cause of the collision was also a question of fact for the jury for the same reason above stated.

In view of the fact that the court instructed the jury at the time the evidence was received to the effect that the acts

or omissions of the section hands, employees of defendants, who were working on the tracks and roadbed at the West Eighth Street crossing were not binding upon defendants, and limiting the use of such testimony to the question of whether or not plaintiff Gabriel Baca, Sr., was guilty of contributory negligence, we believe that while it might have been better practice, it was not reversible error to fail to again instruct the jury on that question.

We will next discuss assignment No. 4 as we believe it will effectually dispose of the question of the court's refusal to grant judgment n. o. v. Viewing all of the evidence in the light most favorable to sustaining the judgment of the trial court, we are unable to glean from the transcript of the evidence anything that justified an instruction on the theory of wanton negligence. We stated in Scott v. Scott, 75 Ariz. 116, 252 P.2d 571, that it is error for a court to instruct on a theory where there is no evidence to support it. Citing Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325. The court commented in the Scott case that an instruction on wanton negligence in the absence of some evidence to support it, would have been misleading and might have induced the jury to believe that they could find the defendant guilty of wanton negligence. And in Barry v. Southern Pac. Co., 64 Ariz. 116, 166 P.2d 825, 828, we quoted with approval the definition of wanton

negligence from the Restatement of the Law of Torts, Vol. 2, section 500, which reads as follows:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, *knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."* (Emphasis supplied.)

For the purpose of determining whether the court erred in instructing the jury on wanton negligence we will consider the evidence of plaintiffs not only in the light most favorable to sustaining the judgment of the trial court but we will consider all of the testimony submitted by plaintiffs on the question of defendants' negligence as true, thus resolving the question of wantonness into one of law.

We will first consider plaintiffs' evidence on the question of the speed of train No. 370 as it proceeded south within the city limits of Tempe on October 18, and especially as it approached West Eighth Street. Ralph Hornbaker, a witness for plaintiffs who did not notice the train until after it had crashed with the truck, estimated its speed at 30 mph. Plaintiff Gabriel Baca, Sr., estimated the speed at

30 to 40 mph. He did not see the train until it was within 40 feet of him. This is the only evidence submitted by plaintiffs relating to speed. We are of the view that even though train No. 370 was making 30 to 40 mph through the town of Tempe on that date, this act alone did not constitute wanton negligence as above defined. In view of the fact that flashing lights and bell ringing signals had been installed by the Railroad at said Eighth Street crossing, which gave unmistakable warning that a train was in close proximity to the crossing, and in view of the fact that section 101, chapter 3, Session Laws of 1950, section 66–168, A.C.A.Cum.Supp.1952, provides that:

"(a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

"1. A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train".

and section 66–186, A.C.A.Cum.Supp.1952, which provides:

"It is a misdemeanor for any person to violate any of the provisions of this act (sections 66–151—66–189) unless such violation is by this act or other law of this state declared to be a felony."

Excessive speed under such circumstances in our opinion, would not lead reasonable men to realize that it would create an unreasonable risk of bodily harm to persons lawfully using a railroad crossing and particularly West Eighth Street in Tempe where flashing lights were clearly visible and bell-ringing signals clearly heard, nor would the knowledge of such facts involve a high degree of probability that substantial harm to such persons would result therefrom.

Plaintiffs' evidence relating to whether the whistle was blowing or the bell was ringing as train No. 370 approached the crossing at West Eighth Street is all negative in character. The most that was said by any witness was that he did not hear the whistle or bell, while the testimony of the trainmen corroborated by disinterested witnesses was positive that both bell and whistle were being sounded. A Miss Chapman who works at the State Capitol Building in Phoenix said that the whistle was blowing frantically. At the time of the collision she was only "two or three houses" away from the scene of the accident.

Again, we will accept as true the evidence that the brakes of No. 370 were defective on that date. The evidence discloses that the brakes were not even applied until after the engine had crashed with the truck and had crossed Eighth Street. If

the brakes had been in perfect working order and had been applied 40 feet north of Eighth Street the evidence is that the collision could not have been avoided. The engineer and Baca both testified they did not see each other until the engine was about 40 feet north of the truck. At 40 mph the engine would have crashed with the truck in two-thirds of one second. Assuming the defective condition of the brakes, this, under all the evidence, did not contribute in the slightest degree to the collision, for the reason as above stated, the brakes were not applied until after the crash occurred.

With respect to the allegation that the section hands signalled plaintiff Baca to drive across the railroad tracks, the evidence is not in conflict on the lack of authority of section hands to signal traffic across the tracks and it is clear that if one of the section hands did give such a signal he was acting beyond the scope of his authority for which defendants cannot be held liable.

The further allegation that trees and houses maintained by the Railroad north of Eighth Street and west of its tracks blocked the view of plaintiff Baca as he approached the railroad crossing to the extent that he could not see a train approaching from the north was not supported by the evidence. Plaintiff Baca admitted upon the witness stand that he stopped his truck about 25 feet west of the first rail and stated that at that point the trees and houses did not interfere at all with his view north so as to prevent him from seeing the approach of train No. 370. He testified the trees were 78 feet west of the tracks and the houses were still further west.

The evidence collated above constitutes all of the material evidence on the question of the existence or non-existence of wanton negligence in this case and it compels the conclusion that wanton negligence was not shown to exist. The court therefore erred in instructing the jury upon that subject.

The judgment is reversed and the cause remanded for a new trial.

STANFORD, LA PRADE, UDALL and WINDES, JJ., concur.