286 P.2d 761

R. L. BRYAN and Pauline Bryan, husband and wife, Appellants,

v.

SOUTHERN PACIFIC COMPANY, a corporation; Rex Daniels, Alvin Richards and John Doe, Appellees.

No. 5846.

Supreme Court of Arizona.

July 18, 1955.

Herbert Mallamo, Phoenix, for appellants.

Evans, Hull, Kitchel & Jenckes, Ralph J. Lester, Phoenix, for appellees.

STRUCKMEYER, Justice.

This action was initiated in the Superior Court of Maricopa County, Arizona, for the recovery of damages resulting from a collision between plaintiffs' automobile and a train under the control of the defend-

ant Southern Pacific Company. Trial resulted in a verdict in favor of defendants; from the judgment entered thereon and order denying motion for new trial, plaintiffs appeal.

Plaintiffs' first assignment of error is directed to the refusal of the trial court to instruct the jury on wanton negligence. Wanton negligence has been repeatedly defined by this court. Essentially it involves the creation of an unreasonable risk of bodily harm to another (simple negligence) together with a high degree of probability that substantial harm will result (wantonness). Southern Pacific Co. v. Baca, 77 Ariz. 173, 268 P.2d 968; Scott v. Scott, 75 Ariz. 116, 252 P.2d 571; Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325; Barry v. Southern Pacific Co., 64 Ariz. 116, 166 P.2d 825; Womack v. Preach, 63 Ariz. 390, 163 P.2d 280; Conchin v. El Paso & S. W. R. Co., 13 Ariz. 259, 108 P. 260, 28 L.R.A.,N.S., 88. One effect of wanton negligence is to bar the defense of contributory negligence. Womack v. Preach, supra; Alabam Freight Lines v. Phoenix Bakery, Inc., 64 Ariz. 101, 166 P.2d 816; Southern Pacific R. Co. v. Svendsen, 13 Ariz. 111, 108 P. 262.

Much of the evidence is undisputed. On the night of the accident at approximately the hour of 1:00 A.M. the defendants were switching six freight cars described in the evidence as gondola cars. These cars were initially propelled eastward toward and across Seventh Street, a principal boulevard in the heart of the city of Phoenix, Arizona, by a switch engine which was detached and remained approximately four blocks to the west at Third Street. This operation is commonly known as a running or flying switch. The engine's bell was not ringing nor was its whistle being sounded; there were neither lights nor a brakeman on the shunted cars. Eight lines of tracks intersected Seventh Street. The plaintiff Pauline Bryan was struck by the lead car after she had crossed four lines of tracks and was on the fifth. There is a wigwag device guarding the approach to the crossing which is operated by the presence of a locomotive or train at least a quarter of a mile from the crossing if the main line track is being used but, and as to this the evidence is somewhat uncertain, either it did not operate for trains making a reverse movement after having passed over the crossing or if it did operate, did not operate on the switching tracks until an approaching train was within thirty feet of the crossing. The plaintiff Pauline Bryan was familiar with the crossing and knew that a wigwag device was present to signal the approach of trains but seemingly was unfamiliar with the limitations of the device. In any event it was so placed as to be invisible to travelers after reaching the first line of tracks.

Practically since the advent of railroading the making of flying switches in populous areas without proper precautionary measures has been considered to be gross negligence. Brown v. New York Central

R. Co., 1865, 32 N.Y. 597; Illinois Central R. Co. v. Baches, 1870, 55 Ill. 379. Similar language to that in the leading case of Johnson v. Seaboard Airline Ry. Co., 163 N.C. 431, 79 S.E. 690, 696, Ann.Cas.1915B, 598, has frequently been used:

"* * * This court has recently declared, in Vaden v. North Carolina R. Co., 150 N.C. 700, 64 S.E. 762, that: 'Making "flying switches" on the railway tracks and sidings running across and along the streets of populous towns is per se gross negligence, and has been so declared by all courts in this country and by text-writers generally. It is stated in one of the best known textbooks that the use of a running switch in a highway in the midst of a populous town or village is, of itself, "an act of gross and criminal negligence on the part of the company"'—citing Shearman and Redf. Neg. (3d Ed.) § 466; (citing cases) * * *."

The law relative to the precise question presented herein has been correctly summarized as:

"* * * It has been held to be per se negligence for the employees of a railroad company to make a flying switch on railway tracks running across the street of a populous town, without signals or other warning to notify travelers of the danger, and some courts have said that such a practice is negligence so gross as to approach wilfulness or wantonness, in some cases over-coming the effect of contributory negligence. This is especially true where the crossing is a much-frequented one, * * *". 44 Am.Jur., Railroads, Sec. 518, page 762.

And see the extended annotation in 151 A.L.R., commencing at page 9, on what conduct on the part of a railroad precludes the defense of contributory negligence.

We are unwilling to say that in every instance the making of flying switches across the streets of populous towns is per se wanton negligence, but we have no hesitation in saying that it can be so described if adequate means are not employed to protect the traveling public; particularly if made as the plaintiffs claim at night without lights, bells, whistle, brakemen, guards or adequate warning device. It seems to us that under such circumstances there is a high degree of probability that substantial harm will result.

In the present case there is a direct conflict in the testimony as to whether adequate means were employed to protect the traveling public. Plaintiff Pauline Bryan testified that no signal was given to her by anyone to warn of the passage of a train over the tracks. The defendants' testimony was that a switchman stood in the center of Seventh Street with an electric lantern for the purpose of signalling traffic and did signal in plaintiff's direction on her approach to the tracks. This court on appeal must assume the truth of plain-

tiffs' evidence that no signal was given to warn of the approach of a train.

"It is well settled that on appeal the court must assume that the jury, as the trier of the facts, accepted the view of the evidence most favorable to the winning party. This rule, however, does not apply in determining whether instructions should or should not have been given. We must assume that the jury might have believed the evidence upon which an instruction in favor of the losing party was predicated, and that if the correct instruction had been given 'the jury might have rendered a verdict in favor of the losing party.' O'Meara v. Swortfiguer, 191 Cal. 12, 214 P. 975, 976. The truth of the evidence or allegations tending to warrant the instruction offered will be assumed by the court on appeal. (Citing cases.)" Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240, 242, affirmed on rehearing 64 Ariz. 260, 169 P.2d 84.

We therefore hold that since it was possible for the jury to find that the defendants were wantonly negligent, the failure to give plaintiffs' requested instruction is reversible error.

The plaintiffs assign as error the refusal of the trial court to give their requested instruction number three. This requested instruction was predicated on Regulation 103A of the Southern Pacific Company read into evidence without objection. The applicable portion of this regulation provides:

"Before kicking or dropping cars on public crossings not protected by a watchman or by gates a member of the crew must take watch at the crossing to afford protection to traffic while movement is being made."

Plaintiffs excepted to the failure to give their instruction on the grounds that "the regulation is for the safety of the traveling public" and urge in this court that such instruction was relevant to the issue of defendants' negligence. Defendants argue that the regulation has no bearing on a negligence action of this type and they quote extensively from Smellie v. Southern Pacific Co., 128 Cal.App. 567, 18 P.2d 97, 19 P.2d 982, to the effect that it was not admissible evidence against the defendants in the first instance. We first observe that Smellie v. Southern Pacific Co., supra, is an opinion of the District Court of Appeal, Third District, California. Approval of that portion of the opinion holding that the private operating rules of an employer are not admissible was withheld by the Supreme Court of California in denying a rehearing.

"Per Curiam.

"Respondents' petition to have the above-entitled cause heard and determined by this court after judgment in the District Court of Appeal of the Third Appellate District is denied.

"Such denial, however, shall not be

construed as an approval by this court of that portion of the opinion of the District Court of Appeal which holds that admission of evidence of the rules adopted by the defendant for the government of its business was incompetent and prejudicial." Smellie v. Southern Pacific Co., 128 Cal.App. 583, 19 P.2d 982.

That such evidence is admissible in California has now been settled beyond question: ·

"* * * The rule was properly admitted in evidence as bearing on the standard of care respondent thought appropriate to insure the safety of others at its track crossings. (2 Wigmore on Evidence [3d Ed.] § 282, p. 132; 3 Shearman & Redfield on Negligence, § 506, p. 1281.) While a violation of such rule would not constitute negligence per se, it would be a circumstance for the jury to consider on the issue of respondent's negligence. Gett v. Pacific Gas & Electric Co., 192 Cal. 621, 625, 221 P. 376; Nelson v. Southern Pacific Co., 8 Cal.2d 648, 654, 67 P.2d 682; Simon v. City and County of San Francisco, 79 Cal.App.2d 590, 597–598, 180 P.2d 393; Holder v. Key System, 88 Cal.App.2d 925, 935, 200 P.2d 98. * * *" Powell v. Pacific Electric Ry. Co., 35 Cal.2d 40, 216 P.2d 448, 452.

This general subject here under consideration has occasioned considerable difference of opinion; for that reason we have examined the authorities extensively. The cases were first collated in the annotation to Deister v. Atchison, T. & S. F. Ry. Co., 99 Kan. 525, 162 P. 282, L.R.A.1917C, 784. Our examination of these and later cases indicates that eight states[1] do not admit such operating rules in evidence. Numerically the states[2] admitting the evidence greatly outnumber those opposed to its admission.[3]

---

1. Iowa, Kentucky, Michigan, Minnesota, Nebraska, Virginia, Wisconsin and Wyoming.

2. Alabama, California, Connecticut, Georgia, Illinois, Indiana, Kansas, Maryland, Massachusetts, Mississippi, Missouri, New Hampshire, New Jersey, Ohio, Oregon, Rhode Island, South Carolina, Texas.

3. While New York is generally credited on the authority of King v. Interborough Rapid Transit Co., 233 N.Y. 330, 135 N.E. 519, with admitting the rules as evidence of negligence, in the later case of Longacre v. Yonkers R. Co., 236 N.Y.

119, 140 N.E. 215, 28 A.L.R. 1030, it was held that the particular rules in question were not safety rules and not admissible because immaterial. Judge Pond did recognize the criticism usually directed against their admission. This criticism, although wholly unrelated to a determination of the case, has apparently been taken by the Appellate Division of the Supreme Court of New York as implying that the operating rules of an employer are not admissible in the state of New York. Renoud v. City of New York, 251 App.Div. 851, 868, 296 N.Y.S. 702.

In considering the reasons assigned for the admissibility of the safety rules of an employer we are persuaded that such evidence as a general proposition is clearly relevant to establish a material issue necessary to be proved in many cases of negligence. Negligent conduct may be predicated upon the doing of an act which a reasonable man *should realize* involves an unreasonable risk of causing harm to another. Restatement of the Law of Torts, Section 284. It is the risk reasonably to be perceived which defines the duty to be obeyed. Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253.

"* * * before liability may be imposed for an act, the prevision of a reasonable person must be able to recognize danger of harm to the plaintiff or one in plaintiff's situation." Tucker v. Collar, 79 Ariz. 141, 285 P.2d 178, 181.

And see 38 Am.Jur., Negligence, Section 24.

In our opinion the rules of an employer adopted for the safe operation of its business have probative value in establishing whether a defendant-employer *realized or should have realized* that his conduct involved an unreasonable risk of injury. Therefore we have no hesitation in saying, as was said in Powell v. Pacific Electric Ry. Co., supra, that "While a violation of such rule would not constitute negligence per se, it would be a circumstance for the jury to consider on the issue of respondent's negligence."

The principal criticism now leveled against the admission of such rules is based on the grounds of competency, that is, the admission of the rules of an employer in evidence against the employer might tend to discourage the adoption of safety rules. Longacre v. Yonkers R. Co., 236 N.Y. 119, 140 N.E. 215, 28 A.L.R. 1030; Southern Ry. Co. v. Allen, 88 Ga.App. 435, 77 S.E.2d 277. With this criticism we do not agree because we fail to understand why, as a practical matter, an employer will refuse to adopt such rules when by their adoption *and enforcement* the accident would not occur—at least through fault of the employer's servants. To us the more likely result will be that an employer will require a stricter adherence to his rules. In any event it is by no means clear that our holding will cause employers to abandon rules of safety for the protection of life and property and until it does become clear we do not feel that evidence which is otherwise relevant should be arbitrarily excluded. See Cincinnati Street Ry. Co. v. Altemeier, 60 Ohio St. 10, 53 N.E. 300.

While we are of the opinion that it was proper for the trial court, if requested, to instruct the jury as to the effect of the operating rules of the defendant Southern Pacific Company, we do not mean to approve this particular instruction. Without going into detail, it is sufficient to say that in our opinion the requested instruction has several defects which although not raised by the defendants, justified the trial court's refusal to give it.

A portion of the cross-examination of the plaintiff Pauline Bryan is assigned as error. From the questions it appears that defendants were attempting to elicit the fact that of $900.38 damages to the plaintiffs' motor vehicle all except $50 was paid by plaintiffs' insurance carrier. Plaintiffs objected to this examination on the ground that the testimony was not material to a determination of any issue before the court. After some discussion between court and counsel the plaintiff was excused without responsive answers to this line of inquiry. It is urged here not only that the evidence was immaterial but that it was prejudicial in that thereby the jury was left with the implication that plaintiffs were asking for damages which had already been recouped. The first question presented under this assignment is whether the evidence was material to any issue necessary to be determined in the action.

Section 21–501 A.C.A.1939 [4] is similar to Rule 17(a) of the Federal Rules, 28 U.S.C. A. In construing this rule the United States Supreme Court in United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 216, 94 L.Ed. 171, 12 A.L.R.2d 444, held (1) that if the insurer paid the entire loss suffered by the insured, such insurer is the only real party in interest and must sue in his own name and (2) that if the insurer paid only part of the loss, then both the insured and the insurer have substantive rights against the tort-feasor which qualify them as real parties in interest and (3) "Although either party may sue, the United States [the defendant], upon timely motion, may compel their joinder." This last statment seems to lend support to the rule followed in a number of recent federal cases, Gas Service Co. v. Hunt, 10 Cir., 183 F.2d 417, and National Garment Co. v. New York C. & St. L. R. Co., 8 Cir., 173 F.2d 32, that if the action is initiated by the insured, the insurer must, on motion of the defendant, be joined as a party to the action. This conclusion does not seem to be required by the Aetna case in view of the language used by the court in the opening paragraph of its opinion. Therein the decision was specifically limited to the determination of whether an insurance company could bring a suit in its own name against the United States.

We do not think it procedurally necessary or even desirable to require the joinder of the insurer *in every case* where the action is brought by the insured. If the insured brings the action and there has

4. "Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the state so provides, an action for the use or benefit of another shall be brought in the name of the state." Rule 17(a), Rules Civil Procedure, Sec. 21–501, A.C.A. 1939.

been a partial payment of the loss by an insurance company, two different situations should be recognized. First, if the insured does not seek to recover all the damages but only that portion for which he has not been compensated by his insurer, there being two substantive rights, a tort-feasor by such splitting of the cause of action might be compelled to defend two suits for one wrong.. This result can be avoided by compelling the joinder of the insurer on timely application of the defendant. Section 21–510, A.C.A.1939 Rule 19(b). Second, if the insured brings the action seeking to recover *all* of the damages, reputable authority and reason indicate that the suit can proceed without the insurer.

"* * * The general rule is that where the loss exceeds the amount of insurance paid, the insured may sue in his own name and recover the full amount of the loss, the question of the distribution of the proceeds being a matter between the insured and the insurer only. 46 C.J.S., Insurance, § 1209, pages 152, 172(c). 29 Am.Jur., Insurance, § 1344, pp. 1005, 1006. Mullins v. Bolinger, 1944, 115 Ind.App. 167, 171, 55 N.E.2d 381, 56 N.E.2d 496, supra, and cases cited. Illinois Cent. R. Co. v. Hicklin, 1909, 131 Ky. 624, 628, 115 S.W. 752, 23 L.R.A.,N.S., 870; Manley v. Park, 1904, 68 Kan. 400, 401, 75 P. 557, 66 L.R.A. 967. Therefore, no error was committed in sustaining the demurrer to the second paragraph

of answer. * * *" Powers v. Ellis, 231 Ind. 273, 108 N.E.2d 132, 135.

For recent cases affirming the rule, see also, Farmers Ins. Exchange v. Arlt, N.D., 61 N.W.2d 429; Dowell, Inc., v. Patton, 221 Ark. 947, 257 S.W.2d 364; Home Insurance Co. v. Boehm, 170 Kan. 593, 228 P.2d 514; Pringle v. Atlantic Coast Line R. Co., 212 S.C. 303, 47 S.E.2d 722; Parker v. Hardy, 73 S.D. 247, 41 N.W.2d 555; Hoosier Condensed Milk Co. v. Doner, 96 Ohio App. 84, 121 N.E.2d 100; and see annotations in 96 A.L.R. 864, 157 A.L.R. 1242.

If the insured claims all the loss there is no splitting of the cause of action and the tort-feasor is not compelled to defend against two or more causes of action. The reason for the rule compelling joinder no longer exists and it would seem therefore that there is no purpose to the existence of the rule itself. Certain practical reasons strongly suggest that the insured alone should be able to maintain the action without the arbitrary and compulsory joinder of the insurer except under the special circumstances of Section 21–510, supra, where complete relief cannot be afforded between those already parties. We point out that under the great volume of automobile accident litigation which is mainly confined to the state courts, the insurer may not always find it desirable to become a party to the action. Sometimes the cause of action is doubtful; sometimes the smallness of the insurer's interest does not justify the expense of counsel or the possibility of being

subject to costs of litigation. In many cases the insurer would therefore be put to the expense of unprofitable litigation or in the alternative subject himself to default on a claim on which in the final determination there might have been some recovery. Moreover, a practice which arbitrarily requires the joinder of the insurer in many instances would open the door to further delay in trial by motion for joinder under conditions which can hardly be said to be more than dilatory, since complete relief can be accorded between those already parties.

We believe that both the tort-feasor and the insurer are adequately protected. On the one hand by Section 21–527, A.C.A.1939, Rule 24(a), since the insurer is bound by the judgment, he has the absolute right to intervene if he finds it necessary to do so in order to protect his interests. Virginia Electric & Power Co. v. Carolina Peanut Co., 4 Cir., 186 F.2d 816, 32 A.L.R.2d 234; Meridian Mutual Insurance Co. v. Hunt, Ind.App., 115 N.E.2d 132; Rursch v. Gee, 237 Iowa 1391, 25 N.W.2d 312. On the other hand, if complete relief can only be afforded to a defendant by, for example, a counterclaim against the insurer, such special circumstances would justify the joinder on timely motion of a defendant.

■ In the event circumstances are such that a defendant can properly effect a joinder either because the insurer has brought the action, the insured has brought the action for only part of the loss, or other special circumstances, then the further question must be answered as to when such joinder must be made. It is clear that the motion for joinder under Section 21–510, supra, must be timely made. United States v. Aetna Casualty & Surety Co., supra; 3 Moore's Federal Practice (2d Ed.) 1348. We recognize that what is timely may vary from circumstance to circumstance, but in common with other rights which may be waived an attempted joinder comes too late if not made before the trial starts.

■ In the present case under our consideration of the law in this jurisdiction, the issue of plaintiffs' insurance was wholly immaterial at the trial since either the plaintiffs had the right to recover the entire loss or the defendants had waived their right to effect a joinder by failing to seasonably move therefor. Inasmuch as it is necessary in any event to reverse this case for a new trial, we feel that it is unnecessary to determine whether the line of examination undertaken by counsel for defendant was prejudicial.

■ Plaintiffs also urge that the court erred in failing to give their requested instruction on last clear chance. They argue that the accident could have been avoided if there had been a brakeman riding the gondolas for by the exercise of ordinary care he could have seen the plaintiffs' automobile approaching the crossing. We think this argument ignores a basic element of the doctrine of last clear chance as

announced in Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071, namely, that a person must negligently subject himself to a risk of harm from another before the doctrine has application. In the present case before the doctrine became applicable, the plaintiff Pauline Bryan would have had either to be occupying the particular track upon which the cars were being shunted or have been obviously incapable of stopping before driving onto the track. We think it sufficient to say as a matter of law that after it became apparent that the driver did not intend to stop and was in a position of peril, a brakeman could not have sufficiently controlled the six gondolas by the use of handbrakes to avoid the accident. The statement in Congressional Country Club, Inc., v. Baltimore & Ohio R. Co., 194 Md. 533, 71 A.2d 696, 700, is directly applicable:

"* * * We think the court properly refused to instruct as to last clear chance on the part of the Railroad Company, since there was no evidence to show that the train could have been stopped so as to avoid the accident, *after* the train crew and engineer knew, or by the exercise of reasonable care should have known, that the bus was in a position of 'helpless peril.'"

The assignments of error herein discussed are the principal questions raised by this appeal; other matters presented are unlikely to recur on retrial.

Judgment reversed for a new trial.

LA PRADE and WINDES, JJ., concur.

PHELPS, Justice, with whom UDALL, J., concurs (dissenting).

The majority opinion is practically barren of the material facts in this case. We therefore believe it essential to an intelligent solution of the issues here presented to relate them succinctly.

At approximately one o'clock, a. m. on May 9, 1952, plaintiff Pauline Bryan was driving her car north on Seventh Street in the city of Phoenix and while crossing the Southern Pacific Company's switching tracks her car was struck by a string of six gondola cars which were then being "kicked" easterly across Seventh Street on a switching track for delivery to the Santa Fe Railway Company. These six cars before being disconnected from the train constituted the easternmost end of a train of 26 cars. The method employed in making the switch was that usually followed by the Railroad.

The foreman stood at a point 80 to 120 feet west of Seventh Street and south of the track on which the switching movement was being made. A switchman was placed on the Seventh Street railroad crossing for the purpose of protecting those who might be traveling thereon and to signal the foreman when in his opinion it was safe to kick the cars across Seventh Street. He gave the safety signal to the foreman who in turn signaled the engineer. The engine

at that time was near Third Street nearly four blocks west of Seventh Street. Upon receiving the signal from the foreman the engineer began the eastern movement of the train. At the time the switchman gave the safety signal for the switching movement he saw the plaintiff's headlights coming north on South Seventh Street approximately two blocks south of the railroad tracks. There were no other automobiles in sight on Seventh Street either north or south at the time. According to the testimony of the foreman Richards, switchman Yates was standing in the middle of Seventh Street when he gave Richards the safety signal. We will more fully discuss the facts in the body of this dissent.

As we understand the majority opinion this judgment is being reversed primarily upon the grounds that the court should have instructed the jury on "wanton negligence". The opinion also states that it was error for the court to refuse to instruct the jury upon the effect of the rules and regulations of the Southern Pacific Company in determining the question of whether defendant was negligent.

First, we desire to observe that although this court as well as the majority of other courts in the country have recognized wantonness as belonging in the field of negligence, it requires no profoundness of thought to discern that the term "wanton negligence" constitutes a contradiction. As an abstract proposition of law, wanton misconduct is positive in character while negligence is negative. Wanton misconduct under the law warrants the imposition of punitive damages against the actor in an action by the injured person as a result of such wanton misconduct. Damages for an injury resulting from negligence is limited to compensatory damages. See 38 Am.Jur., Negligence, Sec. 48.

In Barry v. Southern Pac. Co., 64 Ariz. 116, 166 P.2d 825, 828, we quoted with approval the definition of wanton negligence from the Restatement of the Law, Torts, vol. 2, section 500, which reads as follows:

" 'The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' [Citing cases.]"

The case of Scott v. Scott, 75 Ariz. 116, 252 P.2d 571, 575, written by Justice La Prade has this to say about "wanton negligence":

" * * * Wanton negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is 'in the air', so to speak. It is flagrant and evinces a lawless and destructive spirit. [Citing case.] As we view the evidence the jury might

well have found defendant Murphy guilty of simple negligence of any or all of the acts complained of, but his so-called acts of negligence had none of the attributes of wantonness as heretofore more specifically defined in the cases above referred to."

For the purpose of further emphasizing the error of the majority of the court in reversing the judgment of the trial court in this case we will concede arguendo that technically it was error for the trial court to refuse plaintiff's requested instruction on "wanton negligence". Even assuming that the trial court erred in its refusal to instruct on "wanton negligence", it is manifestly the duty of this court now to consider and determine the question of whether the failure of the trial court to give plaintiff's instruction on "wanton negligence" constitutes reversible error. This requires an examination of the evidence in the case bearing upon that subject.

The defendant pleaded contributory negligence and the jury was instructed upon that question. The jury found for the defendant and in doing so it had to find either that the defendant was not guilty of any negligence or that plaintiff was guilty of contributory negligence.

The cases are legion wherein this court has held that under the circumstances here the appellate court must view the evidence in an overall light most favorable to sustaining the verdict and judgment of the trial court. This is mandatory upon us

under the circumstances of this case in determining the issue of whether or not the trial court committed reversible error in refusing to instruct the jury upon "wanton negligence."

The plaintiff testifies that she had stopped at the "Seven Seas" where she worked five or six days a week as a waitress. This was some time after 12 o'clock midnight. She stopped again at what she termed "Frenchy's Joint" to eat something. She stated that as she approached the Southern Pacific tracks on Seventh Street she slowed down to almost a stop, looked and didn't see any train and that the wigwag signal at South Seventh Street showed no indication of the presence of a train. She stated she was going 10 to 15 mph as she proceeded across the tracks; that she did not see any activity in the yard; that she did not see any lights except one "setting east, it seemed to be still down there." She saw no lights west. She "supposed" the street light was on. In other words, she didn't know whether it was or not. She said further that she was looking back and forth to the right and to the left all the time and that she did not see any train until the corner of the car was about two feet from her car. She was then asked the question:

"Q. Was any signal given to you by anyone at the side of the road or anywhere around to warn you of the operation of a train over those tracks? A. No."

'This one question and answer is the only evidence upon which the majority base their opinion that this case must be reversed. That the switchman Yates was standing in the middle of Seventh Street at the time she approached the tracks was established beyond all reasonable doubt. Her own witness, Mr. Sumner, an employee of the Santa Fe Railway Company who did not know the switchman, testified that he saw him there with a lighted lantern and that when he first saw him he was moving to the side of the street and that if he hadn't moved it appeared to him that plaintiff's auto would have struck him. Yates testified that he waved his lantern frantically in an effort to stop plaintiff before she reached the switching tracks and finally had to run to the side of the road to prevent her from running him down with her automobile, thus corroborating the statement of her witness Sumner.

Richards, the foreman, testified that he received the signal from Yates informing him that it was safe to kick the cars across Seventh Street at that time and that at the time he gave the signal, Yates was standing in the middle of Seventh Street south of the switching tracks.

Under the rule laid down in Southern Pac. Co. v. Fisher, 35 Ariz. 87, 274 P. 779, and Southern Pac. Co. v. Shults, 37 Ariz. 142, 290 P. 152, it was the duty of plaintiff to look and listen before crossing the railroad tracks which are themselves a warning of danger. If she had looked she could have seen the electric lantern frantically waved by the switchman Yates in an effort to stop her. Instead, she almost ran over him as testified to both by Yates and her own witness Sumner.

Notwithstanding the fact that switchman Yates was located on Seventh Street equipped with the standard switchman electric lantern seen by both Richards and the Santa Fe employee, Mr. Sumner, plaintiff states that she saw no lights anywhere except a stationary light down east of Seventh Street somewhere. The inference is that she didn't even see the street light located at the south side of the Southern Pacific tracks and which it was testified would cast its rays of light so that trains would be clearly visible halfway to Sixth Street when being moved on the switching tracks. The evidence is further to the effect that there were no obstructions which prevented the plaintiff from seeing this string of cars. We said in the case of Morenci Southern Ry. Co. v. Monsour, 21 Ariz. 148, 185 P. 938, 940, in prescribing the duties of a railroad company at a dangerous crossing that:

"* * *. At common law, the duty is to adequately warn, not in any particular way, but by any means that are effective. It might be by watchman or automatic signals, or by whistling or by ringing a bell, or by all of these combined, but when the evidence shows that two or more of these were actually employed in a given instance, as here,

and an instruction that, if the jury find that one of these was not employed, the defendant is guilty of negligence per se is erroneous because the jury might be satisfied that the signal ignored in the instruction was not only given, but was sufficient warning to all persons exercising due care. * * *"

The trial judge sits as a 13th juror in the trial of cases in this jurisdiction. He is also authorized by decisions of this court to weigh the evidence on motion for a new trial. General Petroleum Corp. v. Barker, 77 Ariz. 235, 244, 269 P.2d 729. A motion for a new trial was made in this case and denied by the trial court. We respectfully submit that considering the evidence in the light most favorable to sustaining the verdict and judgment of the superior court, there is not a semblance of evidence tending to establish wantonness on the part of the Railroad Company. Certainly it is not so "highly potent" that "it fairly proclaims itself in no uncertain terms" nor is it "in the air" or "flagrant" to the extent that it "evinces a lawless and destructive spirit" as defined in Scott v. Scott, supra, and in our opinion, if the verdict and judgment of the court had been for the plaintiff it would have been the duty of the trial judge upon a motion for a new trial to set the judgment and verdict aside upon ground that there was no evidence to support it.

It is obvious from its verdict that no member of the jury believed the plaintiff's testimony when she stated that the switchman did not attempt to flag her down or that she saw no warning lights whatever before reaching a position of danger, and it is incredible to us that anyone could believe such testimony.

The switchman was placed there for the express purpose of protecting the public against the hazard of "kicking". these cars across Seventh Street. It was his absolute duty both to his employer and to the people of the state of Arizona to do just exactly what he testified he did do, and it is difficult to believe that there exists a man with soul so dead that he would deliberately stand inert and permit any human being to drive into a position of danger which but for the grace of God would have resulted in inevitable death. There was testimony that intoxicating liquor was smelled on the breath of plaintiff at the time the case was being investigated. This could have been the reason she saw no lights, and was unable to state positively that the street light just south of the tracks was or was not shining at the time.

The majority opinion opens wide the door for alleging wanton negligence in every personal injury action and on the slightest evidence in support thereof, compel the trial judge to instruct the jury thereon which will effectually deprive a defendant of the defense of contributory negligence.

One of the assignments of error was to the effect that the trial court improperly denied plaintiffs' motion for a new trial because of the misconduct of counsel for defendants. Specifically the matter complained of arose out of a question propounded to Pauline Bryan relative to the cost of repairing her car, which she stated amounted to some $900.38. She was then asked:

"Q. Actually you only had to pay $50, isn't that correct?" An appropriate objection was made to this question. It is now contended that this reference to insurance, if it be such, constituted prejudicial misconduct in that it was calculated to indicate to the jury she carried insurance. We have held that where such a matter is intentionally injected by plaintiff it is prejudicial and warrants the declaration of a mistrial. However, we have never had occasion to decide the question whether the same rule applies when the matter of plaintiff carrying insurance is brought out by the defendant. The majority opinion concludes with the statement that "it is unnecessary to determine whether the line of examination undertaken by counsel for defendant was prejudicial", which we submit is the only issue presented under the assignment.

Nevertheless, in spite of the fact that the question was not answered by the witness, and without any ruling thereon by the court as to its competency—apparently it was subsequently withdrawn in chambers—the majority now use this query as a springboard to launch into a lengthy dissertation whether a subrogee is or is not the real party in interest, a necessary party, or a proper party; whether the rule compelling joinder applies or whether there may be a splitting of the causes of action. It is our view that the pronouncements made in the majority opinion are dicta inasmuch as such questions are actually not before us for decision. Furthermore it is significant that counsel for plaintiffs did not then consider their objection serious enough to request an instruction or an admonition to disregard the reference, nor did they deem it serious enough to ask for a mistrial. This of itself is sufficient for us to refuse to consider the objection on appeal. See, City Transfer Co. v. Johnson, 72 Ariz. 293, 233 P.2d 1078 and cases therein cited; Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734; Bruno v. San Xavier Rock & Sand Co., 76 Ariz. 250, 263 P.2d 308.

Plaintiffs requested an instruction advising the jury of the rules and regulations of the defendant railroad company governing the kicking or dropping of cars over a public crossing. The trial court, without outlining its reasons therefor, refused the proffered instruction (Pltf. No. 3). The majority opinion now holds that there were several defects therein which "justified the trial court's refusal to give it." With this statement we concur.

The majority having reached this conclusion we think it was wholly unnecessary

and improper for the court to go out of its way by entering into an academic discussion whether a proper instruction—had one been submitted—was relevant to the issue of defendants' negligence. Concededly there is a sharp division of authority on this question. We refrain from committing ourselves at this time as to which line of authority should be followed.

We are firmly of the view that the judgment of the trial court should be affirmed.